The Chancellor.
One objection made on the argument to the granting the relief sought by this bill, was, that it is a bill for the specific performance of an agreement in relation to personalty. From the view I have taken of the case, it is not necessary to go at large into the learning on this subject ; though much was said at the hearing, on both sides, in reference to the doctrine of equity as to the specific performance of such agreements. Courts of equity will not, in general, decree performance of a contract, for the sale of stock or goods, inasmuch as with the same money, either not paid, as in agreements to deliver goods on receiving the price agreed on, where, the party agreeing to deliver, fails to do so on tender of the money, or rccoveied in damages where the money has been paid, the same quantity of the stock or goods may ordinarily be purchased. But, there are exceptions to the rule; and the supreme court of the United States seem inclined to give relief in equity by specific performance on contracts respecting personalty, to a greater extent than that to which the court, of chancery in England has yet gone: 5 Wheat. 151; 1 Peters’ Rep. 305, And in 10 Connecticut Rep. 121, specific performance by transfer of stock was decreed.
But the case made by this bill, if established, is a case of trust.
It appears by the proofs, that the three hundred and seventy-eight shares were transferred to Morton in pursuance of a written agreement, made and entered into by and between Collins, Morton, Perkins and Company, and the People’s Bank at Paterson, under their seals, dated October 21st, 1841. This agreement recites that the parties are variously interested in, and have claims upon, certain three hundred and eighty-eight shares of the stock of the said hank, standing in the name of Collins ; that Perkins and Company had attached the interest of Collins; that Bigelow, Canfield and Company had also attached the same, and had afterwards assigned their interest to Morton; (these attachments were in this state;) that a mutual agreement had been made between all the parties, for the final settlement of the whole matter; that the bank, with the assent ef Collins, should hold the stock until after the settlement of a suit in New-York between this bank and a certain bank io *30 New-York. It is then, by the said written agreement, consented and agreed, that a provisional transfer of three hundred and seventy shares of the stock be made to Morton; that the certificate for the said stock remain in escrow in the hands of L. B. ■Woodruff, esquire; ¡that so soon as the settlement with the New-York bank .is carried out, the transfer to Morton shall take effect and the certificate be delivered to him ; that'thereupon all' dividends in arrear on the stock, should be paid to Morton; the .residue of .the three hundred and eighty-eight shares, being ten shares, to be transferred to the said People’s Bank; and that on the execution of the said agreement, the rights, interest and claims of the parties thereto, to the stock, should be deemed definitively agreed and settled, and that all claims and demands on each .other in relation to the said stock, except such as are created by, or arise under the said agreement, should cease. ’
Under-this agreement, the three hundred and seventy-eight shares were, , on ■ the day of the date of the agreement, transferred t©n the books of the bank to Morton, and the certificate therefor was delivered to Woodruff, to hold and deliver pursuant .to the terms of the contract.
On the 9th of November, 1841, Woodruff delivered the certificate to Morton, and took his receipt for it at the foot of the agreement or a copy of it.
Thére is nothing in this agreement, binding Morton, after the transfer should -be *made to him, to transfer any of these shares to any person whatever. The agreement provides only for the transfer to him. It is -not, therefore, by force of any thing in .the agreement, that .the complainants can succeed. They claim, ■that notwithstanding the written agreement is silent as to any transfer by Morton of any portion of the stock, after he should receive the certificate for it; yet that it was agreed between the iparties, and by Morton, that when Morton should receive the certificate, he should transfer forty-eight of the shares to Perkins .and Company, and eighty of them to the complainants, and ■retain the remaining two hundred and fifty shares for himself.
Is this part-of the complainants’ case established? I think it is. In. the first place, the terms of the-written agreement are .opposed to the idea, that the whole three hundred and seventy- *31 eight shares were to be transferred to Morton for his own benefit. It recites that the parties thereto are variously interested in and have claims on the stock, and states that it is consented and agreed that a provisional transfer be made to Morton. Again, Morton, in his answer, does not claim; the benefit of the written agreement according to the terms of it, but admits that he did agree to receive two hundred and fifty-three shares of the stock, (I am satisfied that he adds the three shares because the complainants, in their bill, had fallen into a mistake in putting the number Morton was to have, at two hundred and fifty-three, instead of two hundred and' fifty,) for the indebtedness of Collins to him, and to transfer ten shares to the bank, ánd forty-eight shares to Perkins and Company; and admits that it was agreed between all the parties, that when Collins should pay the costs of the attachment in New-York at the suit of him and his partner Filly, and should satisfy the creditors who had come in under that attachment, and repay him one hundred and fifty dollars he had advanced to Collins to pay costs, he should transfer to Collins, or whoever was entitled to them under Collins, the remaining shares; (he calls them seventy-seven, deducting the three which he added, as before stated, to the two hundred and fifty ;) and he admits that the agent of the complainants was present when the agreement was made, and showed him the assignment, stated in the bill, to the said agent of the complainant.
I think that this answer, as it is-drawn, and in view of the nature of the transaction, and the circumstances attending it, should be considered a sufficient admission of the trust. If the answer could be considered as making a distinct allegation, that such conditions were agreed upon as to the eighty shares, still it admits a trust as to these shares; and 1 think parol evidence is admissible to show the terms of the trust, and to contradict his allegations as to conditions;
It was objected, that the statute of frauds requires all declarations or creations of trust to be in writing. \
The statute does not extend to trusts of personalty: 2 Story, sec. 972. Three witnesses on the part of the complainants testify,. that the agreement of Morton to transfér the eighty shares-to Collins or his assignees, was without any condition whatever..
*32 The attachment at the suit of Filly, was not till after the assignment by Collins to Morton for the purposes of the agreement.
I am of opinion that the complainants are entitled to relief. A transfer of the eighty shares will be decreed.
Decree accordingly.