WILLIAM R. SAYRE and others *vs.* NICHOLAS J. FREDERICKS and others.

1. The eleventh section of the "act for the prevention of frauds and perjuries," *Nix. Dig.* 330, requiring trusts to be in writing, in terms applies only to trusts of *lands.* It does not extend to trusts of *personalty.*

2. A mortgage of land is a mere security for the payment of the debt, and is not a conveyance within the statute of frauds, so as not to be assignable without writing.

3. A mortgage given to secure a debt to other persons than the mortgagee, operates as a resulting trust, by implication of law, in their favor, which is expressly excepted from the operation of the statute.

4. Parol evidence, to raise an express trust upon the terms of a written instrument, is received with great caution, and must be very clear to warrant a court in establishing the trust.

5. Whether a conveyance be fraudulent or not, depends upon its being made upon good consideration and *bona fide.* If it be defective in either particular, although valid between the parties and their representatives, it is void as to creditors.

6. A denial by the answer of the existence of fraud, will not avail to disprove it, where the answer admits facts from which fraud follows as a natural and legal, if not a necessary and unavoidable conclusion.

---

*Keasbey,* for complainants, cited *Nix. Dig.* 330, § 11; *Knight* v. *Packer,* 1 *Beas.* 214; *Emerick* v. *Harlan, Ibid.* 229; *Owen* v. *Arvis,* 2 *Dutcher* 22.

*Runyon,* for defendants.

VOL. I.                    S

THE CHANCELLOR.   The complainants are execution credi-
tors of Nicholas J. Fredericks upon three several judgments,
amounting to about $500.   When these debts were incurred,
the debtor owned real estate in Newark to the value of about
$3000, subject to encumbrances amounting to $1200.   After
the first suit was instituted, and before judgment was re-
covered, the debtor mortgaged the land to Effy Clark for
$1248, and conveyed the fee to Daniel F. Conklin, the other
defendant, for the alleged consideration of $350.   The bill
charges that the mortgage and the deed are fraudulent and
void as against creditors.   The answer denies the fraud, and
alleges that the mortgage was given *in trust* to secure debts
due from the mortgagor to the heirs of his father, and that
the deed was given in payment of a debt due from the grantor
to the grantee.

It is objected that the trust is not in writing, and there-
fore void under the eleventh section of the act for the pre-
vention of frauds and perjuries.   *Nix. Dig.* 330, § 11.

The statute in terms applies only to trusts of *lands*.   It
does not extend to trusts of personalty.   *Nab* v. *Nab*, 10
*Mod.* 404; *Roberts on Frauds* 94.

The debt is the subject of the trust.   The mortgage is a
mere security for the payment of the debt.   The assignment
of the debt carries with it the mortgage as a consequence.   A
mortgage of land is not a conveyance within the statute of
frauds, so as not to be assignable without writing.   *Martin*
v. *Mowlin*, 2 *Burr.* 969; *Browne on Stat. of Frauds* 65; 2
*Story's Eq. Jur.*, § 1016; 4 *Kent's Com.* 159.

If the mortgage was in fact given to secure a debt due to
other persons than the mortgagee, there would be a resulting
trust by implication of law in their favor, which is expressly
excepted from the operation of the statute.   *Nix. Dig.* 330,
§ 12.

Mr. Eden, in his note to *Fordyce* v. *Willis*, 3 *Brown's Ch.
R.* 588, states that declarations of trust of personal property
are in the same situation as all declarations of trust were
before the statute.   But that he has not been able to find an

instance of a declaration of trust of personal property, evidenced only by parol, having been carried into execution. And although the statute does not extend to trusts of personalty—and although it is at this day well settled that trusts by implication may, by parol, be engrafted upon a written instrument against the terms of the deed itself, parol evidence, to raise an express trust upon the terms of the instrument, is received with great caution, and must be very clear to warrant a court in establishing the trust. *Fordyce* v. *Willis*, 3 *Bro. Ch. R.* 577; *Roberts on Frauds* 94; 4 *Kent's Com.* 305; 1 *Greenl. Ev.*, § 266.

The mode of establishing the trust is obviously a question which concerns the trustee and *cestui que trust* rather than a stranger, and with which the creditor in this case has in fact no concern, save as it may incidentally affect the question of the *bona fides* of the conveyance.

Nor can the mortgage be assailed by the creditor on the ground that it is in the nature of an assignment for the payment of debts, and therefore void, inasmuch as it prefers certain creditors over others. The real question in the cause is, whether the conveyances were made in good faith, or whether they were designed to protect the debtor's property from his other creditors, and on that account fraudulent and void. The case rests entirely upon the answer of the defendants—the debtor and his alienees, and the testimony of the debtor himself. The admitted facts are, that the mortgage and the deed were made upon the same day, and that they covered the whole of the defendant's real estate. The personal estate was covered and subsequently exhausted by executions issued upon confessed judgments. At the time of the conveyance a suit by the complainants was pending against the debtor for the recovery of a part of their debt. The debtor was insolvent. The mortgage was made to his sister. The deed to his brother-in-law. The mortgage was given in terms to secure a debt of $1248, due to the mortgagee. The instrument is silent as to any trust. The answer

admits that no such debt was due to the mortgagee. It sets up, by way of consideration for the mortgage, that it was in fact given in payment of a debt due from the mortgagor to his brothers and sisters, being the proceeds of the sale of a tract of land belonging to their father, which had been sold by the mortgagor, and the proceeds never accounted for to the heirs-at-law. That sale was made in 1843, eighteen years and six months before the mortgage was given. The land sold for $700. The mortgagor, as one of the heirs, was entitled to one seventh of the amount. The mortgage was given for the residue of the proceeds of the sale, with eighteen years and six months interest, no deduction appearing to have been made for commissions, or for the costs and expenses of the sale. No settlement of the account had ever been made. The amount due the heirs had never been ascertained. There was no written recognition of the existence of the indebtedness. No payment had ever been made on account of it. When the mortgage was given, no receipt or discharge for these claims was given by the mortgagee to the mortgagor. The other heirs, for whose benefit the mortgage is pretended to have been given, were not present. They lived, many of them, in remote parts of the country. They were not consulted in regard to it. They had no knowledge of the transaction, and, so far as appears, were never notified of the alleged trust in their behalf. Their rights were in no wise protected or even recognized by the terms of the mortgage. One of the heirs was dead, leaving infant children. No provision was made by which their rights could be ascertained or enforced. The arrangement was made under the advice of counsel.

Admitting the competence of parol evidence to establish the trust, what evidence could have been produced to overcome the terms of the deed, sustained by the evidence of the mortgagor? What honest trustee would have consented to accept a trust upon such terms? What intelligent counsel would have advised or sanctioned it? Is it credible that

such a transaction ever could have occurred, with or without the sanction of counsel, if it were designed in good faith to secure debts due to the heirs? May it not safely be assumed, not only as probable but as certain, that no such idea was in contemplation at the time of the execution of the mortgage? The deed cotemporaneously made to the brother-in-law of the debtor, was for the alleged consideration of $350. The real consideration is admitted to have been a promissory note of the debtor to James Conklin, bearing date on the tenth day of July, 1852, for $228.21, with interest from date. No payment of principal or interest had been made on account. The evidence shows that it had long been regarded as of no value. The grantee had no need for the premises and no desire to purchase. The grantor had no desire to sell or to part with the possession of the property. He in fact continued to occupy it after the sale, as he did before. It is difficult to conceive of a case having more unequivocal badges of fraud. It is impossible, I think, to look at the admitted facts of the case without a conviction that the conveyances of the property by the debtor were not made in good faith for the purpose of paying his debts, but were designed to protect the property from the claims of other creditors.

It is no answer to say that debts barred by the statute of limitations may constitute a valuable consideration for a conveyance. The real question is, whether the transaction was in good faith. If it was not, it is no matter what the consideration was. Whether a conveyance be fraudulent or not, depends upon its being made upon good consideration *and bona fide.* It is not sufficient that it be upon good consideration or *bona fide;* it must be both. If a conveyance be defective in either particular, although valid between the parties and their representatives, it is void as to creditors. 1 *Story's Eq. Jur.*, § 353.

Nor does it at all militate against this conclusion that the answer denies the existence of fraud. Constructive fraud is

not a fact, but a conclusion of law from ascertained facts. Although the answer denies the fraud, it nevertheless admits facts from which the existence of fraud follows as a natural and legal, if not a necessary and unavoidable conclusion.

The complainants are entitled to relief.