The bill recites that the complainants are local posts of the American legion, a corporation formed under an act of the national congress, membership in which is open to all men and women of the United States who served in the military or naval forces thereof during the great war. That the complainants are the only such posts located in city of Bayonne of this state. That in the month of November, 1918, and prior to the armistice, which brought hostilities to an end on the 11th day of that month, a voluntary committee of the city of Bayonne carried on a collection among the citizens thereof, whereby there was collected the sum of $257,000. That through the agency of the Young Men's Christian Association, the Young Women's Christian Association, the American Library Association, the Knights of Columbus, the Salvation Army, the Jewish Welfare Board and the War Camp Community Service, all of which are joined as defendants, the purpose of the collection aforesaid was to provide the men in the military and naval services of this country, and especially those from Bayonne, with comforts, aid and assistance to their mental, moral and physical welfare, in ways not attended to by the national government, or in addition thereto, and to render like service to the dependent members of the respective families of the various men in such military and naval service. That of the said sum of money there remains in the hands of the defendant Roberts, who was the treasurer charged with the duty of disbursing such money, a balance amounting to $50,000. That peace having been declared and the objects of this charity having been discharged from such service, the purposes for which the collection was made can no longer be carried out, the said Roberts declaring that he can no longer, for the reasons mentioned, make any payments out of such fund.
The bill then sets out the aims, objects and purposes of the American Legion, the membership of the same, and the many activities of the association, among which may be mentioned the hospitalization and vocational training of disabled veterans, and the assisting of such veterans in having their *Page 219 
claims properly presented and passed upon. That there are several hundred former soldiers and sailors of the late war in the city of Bayonne who are suffering from injuries and disease contracted in such service, who are not receiving proper care and are without means to secure it for themselves, as well as dependents of other of its citizens who were killed in the late war, and which dependents are in need of financial aid.
The bill further alleges that the complainant posts are the organizations best fitted, by reason of their membership and purposes, to carry into effect the beneficences that were contemplated by those who collected the funds in question and the contributors who patriotically gave thereunto. That there is also in the city of Bayonne the Joyce-Herbert Post, No. 226, of the Veterans of Foreign Wars, another national military order in which only honorably-discharged members of the military force of this country are eligible who have served in war in some foreign country, and that like claims are made by it as those made by the complainants in their bill.
The bill prays that the defendant Roberts may be decreed to pay the balance of the said fund so remaining in his hands, with all accumulations of interest thereon, to the complainants, or some other person, for such purposes as may be decreed. The defendants moved to strike out the bill, on the ground that the facts are insufficient to show complainants' right thereto and want of equity.
The complainants say that this fund constitutes a public or charitable trust to which should be applied the doctrine of cypres. So far as I am able to make out from what was said for the defendants, I apprehend their position to be that this principle is never applied except in cases where a trust is testamentary in its origin. This cannot possibly be so, no matter how frequently that may be the manner of creation, because it is not so indicated in any of the definitions, and is completely met by the opinion of the court of errors and appeals in the leading case ofMackenzie v. Trustees of the Presbytery of Jersey City,67 N.J. Eq. 652, where the trust was created by deed. *Page 220 
While I know of no instance where an accumulation of funds, with a history similar to that of the one in question, has been brought to the attention of any court for a like determination, yet it seems to me that the position of the complainants is sound as to the main features thereof:
"Charitable trusts include all gifts in trust for religious and educational purposes in their ever-varying diversity; all gifts for the relief and comfort of the poor, the sick and the afflicted, and all the gifts for the public convenience, benefit, utility or ornament, in whatever manner the donors desire to have them applied." Perry Trusts § 687.
"But there are cases in which courts, in the strict discharge of their judicial duty, may well apply a fund devoted to a particular charity to a cognate purpose, to prevent a failure of justice, and to protect trustees in applying moneys in their hands to some useful purpose." Perry Trusts § 72.
"Where there is an intention exhibited to devote the gift to charity, and no object is mentioned, or the particular object fails, the court will execute the trust cy pres, and will apply the fund to some charitable purposes, similar to those [if any] mentioned by the donor." Pom. Eq. Jur. § 1027.
"(1) A charity, in its legal sense, may be more fully defined as a gift, to be applied, consistently with existing laws, for the benefit of an indefinite number of persons, either * * * by relieving their bodies from disease, suffering or constraint, * * * or otherwise lessening the burden of government."96 Mass. 539 (at p. 566.)
This definition was adopted by the court of errors and appeals in Mackenzie v. Trustees of the Presbytery of Jersey City,supra. That the doctrine obtains in this state will appear from:Mackenzie v. Trustees, c., supra; Brown v. Condit,70 N.J. Eq. 440, although in that case it was not applied;Rector, c., of St. James Church v. Wilson, 82 N.J. Eq. 546;Vineland Trust Co. v. Westendorf, 86 N.J. Eq. 343. In this case the trust not being illegal, merely for charitable uses, and the trustee having no further right, as he conceives, to disburse it, there is no sound reason that it should remain dormant, and, for the reasons expressed in all the authorities, among which I have cited some, there ought to be some use to which it can be put that will carry out the intentions of the donors as nearly as *Page 221 
possible. Those donors could not be found, as many of them contributed on the streets by depositing greater or lesser sums of money in currency.
Not only may it be said that this money was raised for the "relief and comfort of the poor, the sick and the afflicted," but it was, in the highest degree, for the "public convenience." It has become a maxim of modern warfare that no longer is it carried on between the armies alone of the combatant states, but that it has developed into a contest of the entire populations of the warring countries. It is the Napoleonic conception of a nation in arms.
Such a trust is not repugnant to the statute of frauds, because that applied only to trusts in lands and not personality.Kimball v. Morton, 5 N.J. Eq. 26; Hopper v. Holmes, 11 N.J. Eq. 122; Sayre v. Frederick, 16 N.J. Eq. 205.
Mr. Roberts now finds himself with this money in his possession, and, under the circumstances, with no way of being relieved thereof unless by the aid of this court, and I am credibly informed will be very much pleased if such a result can be accomplished, it would seem that, under the circumstances, it is appropriate that the doctrine of cy pres should be adopted.
I will hear counsel as to the scheme that should be adopted to carry the foregoing into effect.
 SUPPLEMENTAL OPINION.
After a careful consideration of the reports made by a majority of the trustees as well as by the dissenting member thereof, I have become convinced that the scheme proposed by the majority presents the greater wisdom. That scheme succinctly stated is, the investment of the principal amounting to $50,504.45 for a period of five years, during which no disbursements shall be made therefrom, but leaving the accrued interest of $6,390.54 (and interest to accrue in the future) for present and other needs that may arise within *Page 222 
the said space of time for the assistance of the objects of the original trust. The other plan advocated embraces the building of a memorial building for recreational and other purposes, in the interest of the veterans of the world war.
It should be borne in mind, first, that the duty of applying the funds in hand rests upon the court, which may not delegate its duties, but must, in the final analysis, bear the responsibility for its decision, even though it has sought and earnestly considered the very valuable assistance that the trustees have rendered. Secondly, it must be remembered that it is not within the province of this court to use an arbitrary discretion for the purpose of putting the subject-matter of the trust to the highest possible use conceivable. Charities, 5R.C.L. § 104 et seq. On the other hand, the duty is to apply the fund to a cognate or similar purpose, as nearly like the original scheme as can be devised. With this thought in mind it should not be lost sight of that the court is, to a large extent, bound by what has been properly proven in the case. It is true that in the dissenting report many statements are made of the purposes originally comprehended in the trust and the personal opinions of individuals and organizations who gave a proper and lively interest in the matter. As to the latter, I feel that the opinions expressed represent the personal wishes of the individuals and organizations expressing them, without any appreciation of what my duties are. I do not, as I have just intimated, sit in a charitable capacity, but judicial, exclusively.
So far as the statements made in the minority report of the purpose of the donors of the fund, it is only necessary to point out that there is no proof thereof, while the only cognizable proof in the proceeding is contained in the bill of complaint. The bill points out that the purpose was to provide the men in the military and naval services of this country, and, especially, those from Bayonne, with comfort, aid and assistance to their mental, moral and physical welfare, by means not attended to by the national government or in addition thereto, and also to render like services to the dependent members of the respective families of the various men in such *Page 223 
services. This statement has never been denied, and, as counsel well know, these facts are the only ones that are sufficiently before me. Consequently, if these were the purposes to be subserved by the expenditure of the fund, I feel that like services, and not a recreational hall, are the nearest approach that can be conceived to which the revenue of the fund now remaining may be put. It may be that there are at this time no proper citizens of Bayonne in a position requiring any help other than that which may be secured by recourse to the veterans' bureau under the appropriate acts of congress. But I do not know it, since no evidence has been produced upon that score to which I am permitted to give effect. But even so, as time goes on and men and women grow older, new conditionns are almost certain to arise that cannot be foreseen by the exercise of ordinary human intelligence. Then, I think, will appear the wisdom of the far-sighted members of the trustees who will have kept in hand the principal of this fund, to be devoted to the amelioration of the condition of the individuals affected, under the supervision of the court. Bayonne will exist for a long time to come, and real service can be rendered to its worthy veterans in the future, when they will far more require assistance than while now in the heyday of their manhood.
I will advise an order in accordance with the recommendations of the majority members of the trustees. *Page 224