In Equity.

HARMON G. ALLEN et als. *vs.* THE TRUSTEES OF NASSON INSTITUTE.

York.   Opinion September 27, 1910.

*Wills.   Construction.   Testator's Intent.   Charities.   Educational Gifts.   Cy Pres Doctrine.   Insufficient Funds.   Rights and Powers of Trustees. Private and Special Laws, 1909, chapter 205.*

The primary rule of testamentary construction is to ascertain and execute the testator's intent.

A testamentary gift to provide funds to establish and maintain an institution for the education of young women, to promote their moral, intellectual, and physical education, provides for a school of a different and higher type than a high school, for the education of young women only, and does not authorize use of the funds in whole or in part in assisting in maintaining a town high school or other school for both sexes, though the funds be insufficient to effect the donor's purpose.

If the original purpose of a public charity under a trust fails, and there are no objects to which, under the specific terms of the trust, the funds can be applied, a court may determine whether, in the event that has happened, it was not the donor's probable intention that the gift be applied to some kindred charity as nearly like the original purpose as possible; but if it appears that the gift was for a particular purpose only, and there was no general charitable intention, the court cannot by construction apply the gift cy pres to the original purpose.

Under a testamentary gift to provide a fund to establish and maintain an institute for the education of young women, the fact that the fund amounts to only $32,000 does not warrant a holding that the original purpose has failed so as to permit application of the cy pres doctrine to direct its use to some nearly allied purpose.

If the trustees of a testamentary gift to be used in establishing and maintaining an institute deem the funds inadequate, they may permit them to accumulate.

Under a testamentary gift to provide funds to establish and maintain an institute for the education of young women, the trustees could expend less than one-half of the funds in erecting a building, but could not authorize male pupils to be received with or without payment of tuition, nor contract with the town to run a school for pupils of both sexes by the trustees paying female teachers the unexpended funds in the trustees' hands.

In equity. On report. Decree in accordance with opinion.

Bill in equity brought to obtain a judicial construction of the residuary clause of the last will and testament of George Nasson, late of Sanford. The defendants answered, a replication was filed, a hearing had and the evidence taken out and then by agreement the cause was reported to the Law Court on bill, answer, replication and so much of the evidence as was legally admissible, for that court to "render such decree as the rights of the parties require."

The case is stated in the opinion.

*Foster & Foster, and George A. Goodwin,* for plaintiffs.
*Howard Frost,* for defendant.

SITTING: EMERY, C. J., SAVAGE, PEABODY, SPEAR, CORNISH, KING, JJ.

CORNISH, J. This is a bill in equity brought to obtain a judicial construction of the residuary clause of the will of George Nasson, late of Sanford, who died on September 17, 1882. This clause is as follows:

"Seventeenth: I give, devise and bequeath unto Asa Low, Esq., Irving A. Butler and Charles H. Frost and to their successors, all the rest and remainder of my real estate in trust for the following purposes, to wit: They shall hold, lease and manage said real estate according to the best of their discretion, during the lives of my two sisters Julia and Joanna, and each year after deducting the expenses of said property and trust, shall pay over to my said sisters in equal shares during their joint lives one half of the net income of said real estate, and after the death of either of them shall pay said half to the survivor. The other half of the net income of said real

estate shall be safely and carefully invested and the same and the interest and income thereof shall be held until the death of both of my sisters.   Then all said real estate except a suitable lot for the building and purposes hereinafter mentioned and situate in my field back of Ridley lot and entrance on Main street in Springvale, Maine, shall be sold and the fund derived from such sale or sales together with the previous income from said real estate and interest thereon, shall be used to establish and maintain an Institute for the education of young ladies to be known as the Nasson Institute, which shall be carried on to promote the moral, intellectual and physical instruction and education of young women.   My said trustees for the time being are to have full power and authority to prescribe such fees, terms and rules of admission to said Institute as they may think proper, it being however my wish and direction that female teachers only be employed in said Institute.   One half of the fund aforesaid may be used in erecting a suitable building for said Institute and laying out the grounds therefor and the remaining half shall be safely invested and the income thereof only used toward the expenses of said Institute.   I advise my trustees to keep the funds invested in bonds of the United States or some northern state, and to make no other investment without the consent of the Hon. Judge of Probate for the time being.   If either of the trustees named shall decline to serve or whenever either of said trustees shall move away from the state or shall resign or die, I wish the Hon. Judge of Probate to appoint some suitable person to fill such vacancy."

The will was dated March 24, 1881, was admitted to probate November 7, 1882, and other trustees have succeeded to those named in the will.   Both the sisters Julia and Joanna have long since deceased and the amount of the trust fund is now about $32,000, $12,000 of which consists of real estate and $20,000 of personal property.   The paragraph in question is neither indefinite nor ambiguous.   The testator's intention could hardly have been expressed with greater precision or clearness.   The purpose of this bill therefore is not so much to obtain judicial construction of a

doubtful bequest as to obtain the authority of the court to use the fund in assisting the town of Sanford to maintain a High School in that part of the town known as Springvale.

It is apparent that the testator had no such intention when he made his will. He was himself a resident of Springvale and presumably acquainted with the school system of the town and its needs. That system is supported by taxation and evidently he did not desire to make donations to the town schools which would afford relief to the taxpayers of the town but would not necessarily tend to the improvement of the schools themselves. His sole purpose was to establish a different type of institution from any existing in the town or perhaps in the state, "an Institute for the education of young ladies to be known as the Nasson Institute, which shall be carried on to promote the moral, intellectual and physical instruction and education of young women." The institution was to be of a higher type than a high school, with a wider patronage, designed for pupils of maturer age, confined to the female sex, and preferably with only female teachers employed. It was to bear his name. It was, in his mind, to become in time what many similar institutions in other states have become, a prosperous young ladies seminary.

This being the testator's intention, clearly and unequivocally expressed, we fail to see on what ground this court can justify itself in diverting the trust property to a purpose so radically different as the assistance of a town high school. It is the province of the court to construe a will, not to construct one.

We are urged, however, to do this first on the ground that when the will was made, coeducation was an experiment while now it is an established fact, and it is argued that had the testator realized this, he would not have even advised that an institution be established for the exclusive education of young ladies. The contention is unsupported by the facts. In 1881, when the will was made, all the academies and three of the colleges in the state were open to women and had been for many years. No educational doors then closed to women have been opened since. Conditions have not changed since the will was made, and even if they had, such change, while it might tend to prove the unwisdom of the bequest in the light

of subsequent events, would not authorize its diversion to objects not contemplated by the testator.

In the second place it is suggested that the amount of the trust fund is not sufficient to carry out the wishes of the testator, and therefore under the doctrine of cy pres, the court can direct the use of the trust fund for some nearly allied purpose.

The scope and limits of the cy pres doctrine, as a rule of judicial construction adopted and administered by this court, have been so exhaustively set forth in *Doyle* v. *Whalen*, 87 Maine, 414, and *Brooks* v. *Belfast*, 90 Maine, 318, that their further consideration here is unnecessary.   A simple statement of the familiar principle will show its non-application to the case at bar.   "If the original purpose of a public charity fail and there are no objects, to which under the specific terms of the trust, the funds can be applied, the court may determine whether, in the event that has happened, it was not the probable intention of the donor that his gift should be applied to some kindred charity as nearly like the original purpose as possible. . . . .   But if it appears that the gift was for a particular purpose only, and there was no general charitable intention, the court cannot by construction apply the gift cy pres to the original purpose." *Doyle* v. *Whalen*, supra.   This is not therefore the exercise of an arbitrary power but it is in conformity with the one central rule of testamentary construction, the ascertainment and execution of the intention of the testator.   It applies only when two prerequisites exist, viz, when the court can see in the instrument a general charitable purpose as well as a specific gift, and when the specific gift fails.   In such a case the failure of one object should not work the failure of both and thus thwart the intention of the testator.

In the will under consideration, neither of these prerequisites exists.   The trust has not failed.   It has been administered by the trustees these many years and presumably the fund has increased in amount.   The same trustees who bring this bill have obtained a legislative charter whereby they are incorporated "by the name and style of the trustees of an academy under the name of the Nasson Institute" for the purpose of establishing and maintaining

the very institution provided for in this will. Priv. Laws, 1909, chapter 205. It is true that the amount of the trust fund at the present time is not as large as it should be to establish and maintain such an institution on an extensive scale, but we do not regard it as so paltry as to render the plan impracticable or impossible of fulfilment. A similar objection was raised in *Gilman* v. *Hamilton*, 16 Ill. 225, where a trust fund had been created for the establishment of a theological institution and the answer of the court is in these words. "The fund was mostly in land, which continued for eight or ten years to be of little value and insufficient for the erection of buildings, and the endowment and support of the institution. This is the only reason I have heard assigned, to show the impracticability of executing the trust, and a failure of the objects of the charity. I do not think this satisfactory evidence. It may not now, but may be sufficient at a future day for that purpose. But I might admit even a conclusion that it never could become sufficient, and still it may not show a total failure of the charity; others may contribute, other means and funds may be obtained, and the end accomplished. Very few donations of this kind are alone sufficient to accomplish fully the designs and objects of the benevolent. Should all donations be tested by a rule of sufficiency in themselves, there would be but few that might not be diverted from the original purpose, to some other as near like it as could be readily found, and especially would this be true, of the foundation or first donation beginnings. We have few educational institutions, however well endowed, at this day, whose earliest donations might not have been diverted for the same reasons."

If deemed advisable by the trustees, immediate steps need not be taken for the establishment of the Institute. The expenses of trusteeship should be slight and the fund might be allowed to accumulate for a time in order to place the institution upon a firm financial basis. *Tainter* v. *Clark*, 5 Allen, 66. Other benefactors may be found to assist in the maintenance of a type of school which has no competitor in this state and which may find a ready field of operation and usefulness.

The second prerequisite to the invocation of the cy pres rule may also be lacking, as the court might find it difficult to discover a general charitable purpose in this will but a particular purpose only. If so, and that purpose should fail, the fund could not be applied by the court cy pres the original purpose but would lapse and fall into the estate of the testator. *Merrill* v. *Hayden*, 86 Maine, 133 ; *Brooks* v. *Belfast*, 90 Maine, 318; *Teele* v. *Bishop of Derry*, 168 Mass. 341. That question, however, is not decided in this case. Were its decision necessary, the heirs of the testator should be given an opportunity to be heard.

For the reasons stated, the questions propounded by the trustees must be answered categorically as follows :

1. Are the said trustees authorized, after the sale of the real estate mentioned in paragraph 17, as therein directed, to expend the money, or a part thereof, received therefrom, in erecting a building which shall be known as the Nasson Institute?   Answer, yes.

2. And if so authorized, whether said trustees are authorized to expend less than one-half of said money in the erection of said building or institute?   Answer, yes.

3. Whether said institute when so erected may be authorized to receive pupils of both sexes?   Answer, no.

4. Whether the trustees may authorize the said Institute to charge tuition to male pupils received into said institute for instruction?   Answer, no.

5. Whether the said trustees are authorized to contract with the town of Sanford for the reception into said institute of pupils of both sexes, upon payment by the town of such tuition as the trustees may deem proper?   Answer, no.

6. Whether the trustees are authorized to contract with the town to run a school for the pupils of both sexes in the Town of Sanford by the institute paying a female teacher or teachers the unexpended income or balance of income in the hands of the trustees? Answer, no.

7. If the income derived from the investment of the funds named in paragraph 17 is not sufficient to maintain and support an institute wholly for the education of female pupils, whether the trustees

are not authorized to contract with the town in some manner, so that such income may be sufficient to maintain and support an institute or school for the education of male and female pupils? Answer, no.

> *Decree accordingly. Taxable costs and counsel fees to the amount of fifty dollars to the plaintiffs and fifty dollars to the defendants to be allowed out of the fund.*