THE RECTOR, WARDENS AND VESTRYMEN OF ST. JAMES CHURCH

*v.*

EDMUND WILSON, attorney-general, et al.

[Decided May 13th, 1913.]

Testator bequeathed $14,000, after the death of certain life tenants, to complainants, the rector, wardens and vestrymen of a certain Episcopal church, in trust, to erect a church on a tract conveyed by testator to complainants during his lifetime. When testator died, the neighborhood was a flourishing one by reason of a racetrack there, but, this having been terminated, the village stagnated, and there was no prospect of any reasonable growth of such population or that a new Episcopal church could be maintained there if erected.—*Held*, that such fact did not cause a failure of the charity, but that the fund would be paid over to complainants, to be used for the benefit of the Episcopal church in the neighborhood in a manner to be determined by the court.

On pleadings and proof.

*Mr. Gilbert Collins* and *Mr. Thomas V. Arrowsmith,* for the complainant.

*Mr. Edmund Wilson,* attorney-general, defendant *pro se.*

*Mr. William J. Leonard,* for the other answering defendants.

LEWIS, V. C.

The bill is filed to obtain direction and a construction of the will of Edmund West, who died May 8th, 1885, leaving a last will and testament duly executed and admitted to probate in the office of the surrogate of the county of Monmouth, whereby he gave the sum of fourteen thousand dollars ($14,000) to his executors therein named to pay the income thereof to one Rufus T. West, and to one Emma D. West, during their joint lives, and upon the death of the survivor, without either of them leaving issue, then to pay the said sum of fourteen thousand dollars ($14,000) to the complainants, the rector, wardens and vestrymen of St. James Church, in trust, for the purpose of building and erecting a church to be named "St. Mary's Episcopal Church," on a certain tract of land conveyed by the testator to the complainants during his lifetime, which tract of land is situated near Wolf Hill, in the township of Eatontown, in the county of Monmouth and State of New Jersey; the said church to be built within the space of three years after the happening of the contingency upon which the said gift was to take effect. Emma D. West died on the 31st day of December, in the year 1896; Rufus T. West died on the 8th day of February, in the year 1908, neither of them leaving any issue, and upon the death of the said Rufus T. West, the said sum of fourteen thousand dollars ($14,000) came into the hands of the complainants. At the time of the death of the said testator, the neighborhood of Wolf Hill was a growing and flourishing one by reason of the Monmouth Park Association, which were used during many months of the year for the racing of horses, furnishing employment to large numbers of persons in the vicinity and attracting

large numbers of transient visitors, and of persons who resided there during the whole of the summer months in the vicinity. After the year 1892 the Monmouth Park Association ceased to hold race meetings upon its grounds and the buildings thereon were dismantled and torn down and the railroad tracks running thereto were taken up and carried away, and the lands of said association were sold and conveyed to other persons. The proofs show that the discontinuance of the said race meetings has resulted in the complete stagnation of the village of Oceanport, which had grown up in the vicinity of Wolf Hill by reason of the large business and trade which had arisen by reason of the numbers of persons attracted to the vicinity by the said race meetings, that the population of the said village had stagnated, if not declined. There is no prospect of any reasonable growth of such population, and as a result, an Episcopal church erected on the said lot at Wolf Hill could not reasonably be expected to be supported, either financially or by the attendance of a congregation, because of the very few members of the Protestant Episcopal Church in or near the locality of Wolf Hill. The proofs also show that such members as do reside in the vicinity are affiliated with other congregations of the Protestant Episcopal Church now in existence. No new parish can be created at such place under the canons and laws of the Protestant Episcopal Church in the United States of America for lack of assurance that sufficient money could be raised to pay the annual salary of a priest to conduct the services in such church, and for lack of a sufficient number of male communicants of the Protestant Episcopal Church to comprise a lawful vestry of governing body thereof under the laws of the State of New Jersey.

In view of these facts it seems to me highly undesirable and contrary to public policy to carry out the particular intent of the testator to complete a church building to be named "St. Mary's Episcopal Church" on the tract of land in question.

The learned and exhaustive opinion of Judge Green, in the case of *MacKenzie* v. *Trustees of Presbytery of Jersey City, 67 N. J. Eq. (1 Robb.) 652*, clearly establishes the doctrine of *cy pres* in the jurisprudence of this state. In this case the New Jersey decisions on the subject are considered with the greatest

of care and are examined in detail. The rule to be gathered from such consideration seems to be that the general charitable intent of a testator may be carried out in case it should be undesirable, impracticable or against public policy, although not impossible under altered circumstances to carry out the special intent. The subject has been dealt with in several decisions of the court of chancery since the *MacKenzie Case,* and while in the case of *Brown* v. *Condict, 70 N. J. Eq. (4 Robb.) 440,* the court refuses to make *cy pres* application on the ground that it was impossible at the time of the death of the testator to carry out his actual charitable intention, yet it avows that *cy pres* application can be had even in this event, if the general intent of the testator can be accomplished.

The suggestion of the solicitor of the residuary legatees, that the trust is void for impossibility, does not appear by the facts in this case. The charitable legatee here not only exists but is able to carry out the trust, and applies to this court for an application of *cy pres,* so that the terms of the trust should be modified so as to meet conditions which have changed since the making of the will.

It appears from the last will and testament of the testator that his general charitable intent in making the gift was to benefit the Protestant Episcopal Church in the neighborhood of Wolf Hill, and I am satisfied that it was his will that such general charitable intent be carried out in the event that it should prove undesirable, impracticable or contrary to public policy to carry out the particular intent.

My conclusion is that the defendants, the next of kin of the testator, are not entitled to any of the fund, and that the said fourteen thousand dollars ($14,000), with its accumulations, must be disposed of by the complainants for the benefit of the Protestant Episcopal Church in the United States of America in the neighborhood of Wolf Hill, in such a manner as will most nearly effect the general charitable intention of said testator, Edmund West, and the complainants must propose a scheme in this court for the disposition of the said fund in accordance with the findings of the court.

The cross-bill of the defendants will be dismissed.