BOSTON SAFE DEPOSIT AND TRUST COMPANY, trustee, *vs.*
ATTORNEY GENERAL.

Plymouth. October 24, 1919. — December 15, 1919.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Trust,* Construction, Charitable. *Charity.*

By the provisions of the will of a woman who died in Wareham, a fund was placed in trust to use the capital of the fund to buy land in Wareham and to build thereon, at such time as the trustee should deem expedient, an Old Ladies' Home, which was described in the will with particularity, "and to maintain said Home and support therein out of the income from the balance of the

funds . . . old ladies . . . but it is expressly provided that no person shall be supported in the Old Ladies' Home . . . or otherwise receive any support under the provisions of this article except respectable destitute females of native birth and parentage and of good character, and who can easily read and write," women born in Wareham or Middleborough to "be especially favored." The same article of the will further provided that, "until such home is built," the trustee should "use the income . . . in the support of such necessitous old ladies and in such amounts from time to time as may be approved by my sons Gerard and Horace or the survivor of them." *Held,* that the foregoing provision created a charitable trust, and that it was the duty of the trustee to purchase land, erect a building thereon, and establish and maintain a home for aged women when it was possible to do so in accordance with the intention of the testatrix.

In a suit in equity by the trustee, under the trust above described, for instructions, it appeared that the capital of the trust fund was not sufficient to buy the necessary land, erect the home and thereafter to provide sufficient income to maintain the home, that there were a large number of necessitous old ladies in Wareham who were physically incapacitated and without adequate means of support, that the testatrix's son Gerard died before her and that her son Horace had died without issue, neither son having approved the payment of any of the income to any necessitous old lady. *Held,* that, by reason of the death of the sons without expressing approval, performance of the condition upon which any of the income should be paid out without a home being built had become impossible, and that the trustee should not make any such payment.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Plymouth on February 24, 1919, by the trustee under the will of Susanna K. Tobey, late of Wareham, for instructions.

The entire twenty-fifth paragraph of the will, a portion of which is quoted in the opinion, was as follows:

"Twenty-fifth — When the property mentioned in the thirteenth article of this my will is to be held upon the trusts set forth in the twenty-fifth article of this my will, and the property mentioned in the fourteenth article of this my will is to be held upon the trusts set forth in the twenty-fifth article of this my will or the fifty thousand dollars mentioned in the twenty-fourth article of this my will are to be held upon the trusts set forth in the twenty-fifth article of this my will the same shall be held by the Boston Safe Deposit and Trust Company and its successors upon the following trusts and to and for the following uses and purposes and none other that is to say in trust to build at such time as the trustee for the time being under this article of my will shall deem expedient in the said town of Wareham out of the principal or capital of the property held in trust under this article

of my will an Old Ladies Home, and out of such principal or capital to buy the land therefor, the building itself to cost the trust funds established for said Home under this will not over fifteen thousand dollars (but of course it may be made more costly or altered, added to, improved or enlarged by other contributions) and the building to be not more than three stories high and to maintain said Home and support therein out of the income from the balance of the funds or property held under this article of my will old ladies, under such rules and regulations as the trustee for the time being under this article of my will shall adopt or establish and in such way and manner as shall, with the view of maintaining an agreeable home rather than an almshouse, be in the opinion of such trustee most for their comfort and happiness, but it is expressly provided that no person shall be supported in the Old Ladies Home to be established in pursuance of this article or otherwise receive any support under the provisions of this article except respectable destitute females of native birth and parentage and of good character, and who can easily read and write. Admission of such of these as have been or may be born within the present limits of said Wareham or said Middleborough to the benefits of this trust shall be especially favored (and by native birth and parentage I mean those born in the United States of America and both of whose parents were born in the United States of America) and until such home is built to use the income of the property held in trust under this article of my will in the support of such necessitous old ladies and in such amounts from time to time as may be approved by my sons Gerard and Horace or the survivor of them. It is my preference and my desire, but I do not mean to make it obligatory, that the rector for the time being of the Protestant Episcopal Church in said Wareham or if more than one such church shall be in that town the rectors for the time being of the Protestant Episcopal Churches in said Wareham shall be consulted as to the persons to whom support in said Home is to be given and as to the rules and regulations of the Home established in pursuance of the provisions of this article and that such rector or rectors for the time being as the case may be shall be associated in the management of said Home. Any principal of the trust fund not used for the building of such Home and buying the land therefor

shall be invested if [sic] a safe and prudent manner by the trustee for the time being under this article and any income of the trust property held under this article not used in supporting old ladies as aforesaid shall be added to and invested as a part of the principal out of which it issued. Of course there shall be paid out of the income of the trust property or trust fund held under this article of my will all expenses incident to the execution and administration of the trusts in this article contained including a reasonable compensation to the trustee for the time being for services in respect thereto and all cost of keeping the trust property held under this article of my will in good condition and repair and property [sic] insured and in case of the total or partial destruction of the buildings used for such Home either by fire or other casualty the same shall be rebuilt or repaired out of the trust fund held under this article of my will first using for that purpose the money received as insurance money. And in case of such rebuilding the same may be on the same site in said Wareham or such other site therein as the trustee for the time being shall deem best. The trustee for the time being under this article of my will if such trustee shall deem it expedient so to do, may procure a corporation to be established under the laws of Massachusetts to carry into effect the provisions of this article, and upon such corporation being established may pay over and convey to it to carry out the provisions of this article all funds and property held under this article of my will, but to be held upon the same trusts and to and for the same uses and purposes and subject to the same powers and provisions as are in this article set forth and upon such payment and conveyance to said corporation being made, the trustee so paying and conveying shall thenceforth cease to act as trustee under this article of my will."

Material allegations of the bill are described in the opinion. The prayers of the bill were for instructions,

"1. Whether the $50,000 mentioned in the thirteenth article of the will is now to be held and disposed of upon the trusts set forth in the twenty-fifth article of the will.

"2. Whether $4,800 of the $25,000 mentioned in the fourteenth article of the will, being $1,600 for each annuitant who has died, is now held upon the trusts of the twenty-fifth article of the will.

"3. Whether the surplus income of the balance of the $25,000

mentioned in the fourteenth article of the will, not needed for the annuitants mentioned in said article, is held upon the trusts of the twenty-fifth article of the will.

"4. Whether if any of the sums mentioned in the first three prayers is now held upon the trusts of the twenty-fifth article of the will, the income, pending the establishment of an Old Ladies Home in Wareham, may be applied by the plaintiff in its discretion for the support of necessitous old ladies.

"5. Whether by the words 'necessitous old ladies' are meant the ladies described as being eligible to admission to the Old Ladies Home, namely, respectable, destitute females of native birth and parentage of good character and who can easily read and write, and by native birth and parentage those born in the United States of America and both of whose parents were born in the United States of America; or whether the words 'necessitous old ladies' are meant to include any old ladies who are necessitous.

"6. And for such further orders and directions as to this court shall seem meet."

The suit was reserved by *De Courcy*, J., for determination by the full court.

*C. M. Rogerson*, for the plaintiff.

The Attorney General filed no brief.

CROSBY, J. This is a bill in equity for the construction of the will of Susanna K. Tobey, late of Wareham, and is before us on a reservation made by a single justice, upon the pleadings and a stipulation entered into by the parties.

The twenty-fifth article of the will provides that the remainders, after certain life estates and annuities created by earlier provisions of the will, shall be held by the petitioner and its successors "upon the following trusts and to and for the following uses and purposes and none other that is to say in trust to build at such time as the trustee for the time being under this article of my will shall deem expedient in the said town of Wareham out of the principal or capital of the property held in trust under this article of my will an Old Ladies Home, and out of such principal or capital to buy the land therefor, the building itself to cost the trust funds established for said Home under this will not over fifteen thousand dollars (but of course it may be made more costly or altered, added to, improved or enlarged by other contributions)

and the building to be not more than three stories high and to maintain said Home and support therein out of the income from the balance of the funds or property held under this article of my will old ladies, under such rules and regulations as the trustee for the time being under this article of my will shall adopt or establish and in such way and manner as shall, with the view of maintaining an agreeable home rather than an almshouse, be in the opinion of such trustee most for their comfort and happiness, but it is expressly provided that no person shall be supported in the Old Ladies Home to be established in pursuance of this article or otherwise receive any support under the provisions of this article except respectable destitute females of native birth and parentage and of good character, and who can easily read and write. Admission of such of these as have been or may be born within the present limits of said Wareham or said Middleborough to the benefits of this trust shall be especially favored (and by native birth and parentage I mean those born in the United States of America and both of whose parents were born in the United States of America) and until such home is built to use the income of the property held in trust under this article of my will in the support of such necessitous old ladies and in such amounts from time to time as may be approved by my sons Gerard and Horace or the survivor of them."

The testatrix died August 7, 1911, at the age of one hundred years and six months and twenty-three days; her son Gerard predeceased her, dying May 21, 1911, at the age of seventy-four years, seven months and five days, and her son Horace, who survived her, died May 14, 1918, at the age of eighty years, four months and seven days; neither of the sons left issue.

Under the thirteenth article of the will the testatrix left $50,000 to the plaintiff in trust to pay the income to the testatrix's sons Gerard and Horace during the terms of their natural lives; in case one of them should die without issue, to pay the entire income to the other, and upon the death of both without issue the trustee to hold the entire sum for the uses and purposes set forth in the twenty-fifth article of the will. This amount is now held by the trustee and is available for the support of old ladies under article twenty-five.

In addition, under article fourteen the trustee holds, for the

support of the old ladies described in article twenty-five, the sum of $4,800 which has accrued by reason of the death of four annuitants; and also, a surplus of income not needed to pay the remaining annuitants named in that article, which amounts to $600 annually.

No home for old ladies in Wareham has been established by the trustee; it alleges it is of opinion that $54,800 is not enough for that purpose and leave a principal sum, the income of which, together with the surplus income from the balance of $25,000 mentioned in the fourteenth article, will be sufficient to maintain a home such as is described in article twenty-five, and for that reason believes it is not expedient to establish now the home contemplated by the testatrix. The plaintiff further alleges that there are a number of necessitous old ladies in Wareham who are physically incapacitated and without adequate means of support; that it believes it is advisable at this time to use the income of the property available under the twenty-fifth article for the support of such old ladies, in the manner provided therein. The principal request for instructions is whether the available income may now be applied by the plaintiff in its discretion for this purpose, without the establishment of a home such as is described in the will or the approval of the sons of the testatrix, Gerard and Horace, — they having deceased without ever having approved the payment of any income to any necessitous old lady.

It is plain that article twenty-five created a charitable trust; the power is given to purchase land and erect thereon a building, and to establish and maintain a home for aged women, which it is the duty of the trustee to execute when possible to do so in accordance with the intention of the testatrix. *Drury* v. *Natick,* 10 Allen, 169, 175. *Sells* v. *Delgado,* 186 Mass. 25, 28.

The only condition on which the testatrix gave permission to use any part of the income of the trust before the building of the home, was that the beneficiaries and the amounts of income to be used should be approved by her sons or the survivor of them. Since both sons have died without having approved such use of the trust, performance of that condition has become impossible. *Merrill* v. *Emery,* 10 Pick. 507. *Leeds* v. *Wakefield,* 10 Gray, 514. *Parker* v. *Parker,* 123 Mass. 584. It follows that the fund must be wholly devoted to the other uses designated by the testatrix, namely, the establishment and maintenance of the home.

The will provides that the land and building to be erected shall be paid for out of the principal of the fund and that the home is to be maintained and the old ladies are to be supported out of the income from the balance of the fund remaining. The dominant purpose of the testatrix was to establish ultimately an institutional home for the care and maintenance of necessitous old ladies; that intention on her part seems to have been firmly fixed in her mind: the home so to be established and maintained is minutely described and set forth in the will, which mentions the land to be purchased for that purpose, the cost, character and use of the building to be erected, the persons whom she desires shall be consulted as to its management, and that it is to be conducted under such rules and regulations as the trustee shall adopt.

The will also provides that if the buildings used for the home are destroyed by fire or other casualty, they are to be rebuilt out of the trust fund, first using for that purpose "the money received as insurance money." It is manifest that the testatrix believed circumstances might exist which would delay the building of the home, in which event she provided that the income should be used from time to time and in such amounts for the support of old ladies as might be approved by her sons Gerard and Horace or the survivor of them. If the intention of the testatrix to create and maintain the home cannot now be carried out as the plaintiff alleges because the income is not sufficient for its maintenance, then it would seem plain that the income never will be sufficient for that purpose if it is used for the support of old ladies outside the home to be established; and that if the income is so used it is apparent that the home such as she had in mind never will be established and maintained by the trustee. Such a result, we think, would fall far short of carrying out what she desired ultimately to accomplish. It would not be a rational interpretation of the article in question to hold that the testatrix intended that the income should be used for the support of aged women outside the home if thereby her dominant purpose in founding the charity never could be carried out.

The first, second and third prayers are answered in the affirmative, and the fourth in the negative. It is unnecessary to consider the fifth and sixth questions.

*Decree accordingly.*