WALLACE HODGE et al., Appellants, v. CHARLES A. WELLMAN et al., Appellees.

**TRUSTS:** **Cy Pres Doctrine Approved.** The *cy pres* doctrine is in harmony with the spirit of our institutions. It follows that the court will not permit a charitable trust to fail because the particular *method* provided by testator to effect the trust becomes impossible of performance by reason of unforeseen contingencies, when it can be determined from the will:

1. That testator's all-pervading and dominant purpose was to create a designated and particular charitable trust.
2. That, while he had provided a particular method of working out the trust, yet he did not intend that such method should be exclusive, irrespective of future conditions.
3. That some other method may be substituted, and that thereunder the dominant and designated purpose of testator will be carried out just as nearly as it is possible to carry it out.

*Appeal from Wapello District Court.*—C. W. VERMILION, Judge.

OCTOBER 28, 1920.

REHEARING DENIED JUNE 25, 1921.

ACTION in equity by the heirs at law of Peter G. Ballingall, deceased, praying that they be decreed to be the owners of the Ballingall hotel property in the city of Ottumwa. A demurrer to the petition was sustained, and judgment entered in favor of defendants for costs. Plaintiffs appeal.—*Affirmed.*

*L. L. Duke* and *Gilmore & Moon,* for appellants.

*McNett & McNett,* for appellees.

STEVENS, J.—Peter G. Ballingall died in 1891, and his will was admitted to probate in Wapello County on August 25, 1891.

By the ninth paragraph thereof, he devised certain real property
to the city of Ottumwa in trust for certain designated purposes.
This paragraph is as follows:

"All that portion of my estate known as the Ballingall
House property, being Lot Three Hundred and Thirty-seven
(337) and the northwest 22½ feet off of Lot Three Hundred
and Thirty-eight (338) in the city of Ottumwa, Iowa. Also
the northwest twenty-two feet, more or less, off of Lot Three
Hundred and Thirty-nine (339) (being property known as the
Magnolia Restaurant) in the city of Ottumwa. Also the one acre
of ground, more or less, upon which is situated what is known
as the Pony Pork House now used as a pickle factory, in the
city of Ottumwa, Iowa. Also all that part of Outlot Thirteen
(13) not hereinbefore devised. Also the northwest forty-four
(44) feet off of Lot Three Hundred and Seventy (370) in the
city of Ottumwa, Iowa. I will and devise to the city of Ot-
tumwa, Iowa, subject to the charges herein and mortgages
thereon, in trust for the following uses and purposes, namely:
To be managed and controlled by three trustees, to be named
and selected by the city council of said city and to serve respec-
tively as follows: One for one year; one for two years; one
for three years, and after that one to be annually selected for
three years. And at no time shall there be more than two of
said trustees of the same political party. But nothing herein
contained shall disqualify any of said trustees from being his
own successor, said trustees shall give bond in double the
amount they are expected to handle to be approved by the city
council and said trustees shall for their services receive such
compensation as may be allowed and fixed by the city council.
The duties and powers of said trustees shall be as follows: The
Ballingall House and tenements connected therewith are under
the supervision of said trustee, to be kept up perpetually and
forever, the hotel retaining the same name, which it now bears.
The southeast one hundred and ten (110) feet of that part of
Outlot Thirteen herein devised, is to be used, and kept up under
the supervision of said trustees as a park without expense to my
estate, said 110 feet of Outlot 13 is represented upon the plat
referred to in first clause of this will, as Lots Seven (7), Eight
(8), Nine (9), Ten (10) and Eleven (11). The twenty-two (22)

feet of ground lying northwest thereof and represented on said plat as Lot Twelve, shall be leased by said trustees to any suitable person who will use the same for a flower conservatory. If not so leased the same shall be used by said trustees in connection with said park. All the other property herein devised and placed in charge of said trustees may by them, with the authority and approval of the city council, be leased for any length of time or be by them sold and I so direct, whenever it can in their judgment be done to good advantage. The purpose and object of this provision is to provide in the first place under the supervision and management of said trustees a sinking fund of twenty thousand dollars ($20,000) for the purpose, with insurance proceeds and other accumulations of rebuilding property in case of fire or of remodeling, the hotel building to suitably keep up with the times and the growth of the city.

"I further direct that after the founding and accumulations of said sinking fund before named, the said trustees from the interest derived therefrom together with the rents and incomes that may be yielded by and from said Ballingall House property, and other property above described a second fund of six thousand dollars ($6,000) shall be raised and founded for the express use and purpose of maintaining a public library now established in the city of Ottumwa and for the aid and increase of the same. And I here suggest that the management of said library as soon as possession of sufficient funds from this bequest or otherwise, erect on the ground hereinbefore devised for that purpose, a suitable library building, in such manner that rentals also may be derived from such parts as are not needed for the library, for the increase and assistance of its revenues. But should said library association refuse to accept or use the said ground for the purpose for which it is devised, then I direct and my will is that then the same shall go to the city of Ottumwa, Iowa, for the sole purpose of being used as a part of the park above provided for.

"After the founding of the perpetual sinking fund of $20,000 as hereinbefore provided and the expenditure of the further fund of six thousand dollars to be raised as above directed for the benefit of the public library of Ottumwa. I hereby will and direct that, under the supervision of the trustees hereinbe-

fore provided for all accumulations arising from the rents of the said Ballingall House property, and the other property above described and from the remainders returning to my general estate from the life estate hereinbefore devised or bequeathed; from all funds or sources that may otherwise fall in or accrue to the residuum of my estate and all other property not herein disposed of that I may possess, shall go and be devoted under the direction of trustees to the following uses, and purposes annually: One fourth to and for the further benefit of the library association hereinbefore named.

"One fourth to the poor, and needy people of the city of Ottumwa, Iowa, who are dependent upon their own labor for a livelihood.

"One fourth to the religious societies of said city, without regard to sect and to include all denominations professing to work for the good and well-being of mankind.

"One fourth to the accumulation of a fund to build or aid in building and maintaining a foundling hospital with the especial view and purpose of relieving unfortunate females and for protecting and caring for their offspring. But I direct and authorize that a part of all of the funds just mentioned may be temporarily changed, and diverted for the public good in case of fire, flood, epidemic or other distress."

The city of Ottumwa declined to accept the trust and to appoint trustees, as provided by the will; whereupon the district court of Wapello County appointed the defendant Walsh as a trustee under said will, who, with A. G. Harrow, as executors, administered said estate and looked after and managed the property thereof, until the death of Harrow, in December, 1918, and the subsequent removal of the defendant Walsh from the state, when Charles A. Wellman was appointed as executor and trustee.

Plaintiffs, in their petition, allege, in substance, that all of the real estate referred to in the above paragraph of the will of Peter G. Ballingall was sold by the executors and trustees for $21,700; that the Ballingall House, which is a four-story brick building, has been used as a hotel since the death of testator and long prior thereto; that, during the life of testator, it was the leading hotel in said city; but that a new, modern, fireproof

hotel has recently been erected, at a cost of over $300,000; that it has resulted in the withdrawal of much of the patronage of the Ballingall House, and that the latter cannot be maintained and operated, or leased, at a profit; that the building is old and deteriorating; that it is incumbered by a mortgage of $10,000; that no part of the sinking fund of $20,000, or fund for the Ottumwa library association, has been created; and that, on account of the changed conditions, it will be impossible for this to be done in the future; and that, because thereof, the provisions of said will for the library association, the poor and needy of the city of Ottumwa, the religious societies of said city, and the proposed accumulation of a fund for the erection and maintenance of a foundling hospital, must fail. They therefore pray a decree so holding, and vesting the legal title to the hotel property in plaintiffs, as the heirs at law, or the grantees thereof, of the said Peter G. Ballingall. A demurrer to this petition was sustained by the court, and plaintiffs, electing to stand upon the allegations thereof, appeal.

A brief restatement of the provisions of the ninth paragraph of the will in question will, perhaps, assist us to more clearly understand the claims of respective counsel. Five separate tracts of real property, including the Ballingall House property, are thereby devised to the city of Ottumwa, subject to certain charges therein and mortgages thereon, in trust, to be managed by trustees, to be appointed in a manner therein designated; the hotel and tenements connected therewith, under the supervision of the trustees, to be kept up perpetually and forever, under the name of the Ballingall House. The remaining four pieces of property are to be leased or sold by the trustees whenever, in their judgment, this can be done to good advantage. The purpose and object of the sale of said property are to provide, in the first place, for a sinking fund of $20,000, to be used, with insurance proceeds and other accumulations, for rebuilding the hotel in case of fire, or to remodel the same so as to keep pace with the times and the growth of said city. After the founding and accumulation of said sinking fund, a second fund of $6,000 is to be raised for the express use and purpose of maintaining a public library already established in the city of Ottumwa, and for the aid and increase thereof. After the founding

and accumulation of the sinking fund of $20,000 and the library fund of $6,000, the will directs that all accumulations arising from the rents of the hotel and other property, and from the remainders returning to the estate from life estates created by said will, be applied and devoted, under the direction of the trustees, to the following uses and purposes annually: (a) One fourth to and for the further benefit of the library association; (b) one fourth to the poor and needy people of the city of Ottumwa dependent upon their own labor for support; (c) one fourth to the religious societies of said city; and (d) the remaining one fourth to the accumulation of a fund to build, or aid in building and maintaining, a foundling hospital in said city.

The demurrer admits, or counsel for appellee concedes, that the income from the sale of the real property devised to the city in trust, together with the income therefrom, and from the hotel property, is insufficient to permit the establishment of either the sinking fund of $20,000 or the library fund of $6,000; and that, on account of changed conditions and circumstances, the hotel cannot be maintained and operated in the future at a profit, or so as to provide an income for the charities designated.

The argument of counsel on both sides is devoted almost entirely to a discussion of the *cy pres* doctrine, counsel for appellant contending that it has not been adopted in this state, and that the facts of this case do not bring it within the rule thereof. The doctrine *cy pres,* which is, translated, "as near as may be," applied by the courts of equity, as said in 2 Perry on Trusts (5th Ed.), Section 727, is only a liberal rule of construction to ascertain the intention of the testator. The rule is not new to the profession, and we content ourselves with the citation of a few of the leading cases wherein the subject is fully and exhaustively treated. *Jackson v. Phillips,* 14 Allen (Mass.) 539; *Lackland v. Walker,* 151 Mo. 210 (52 S. W. 414); *MacKenzie v. Trustees of Presbytery,* 67 N. J. Eq. 652 (61 Atl. 1027); *Weeks v. Hobson,* 150 Mass. 377 (6 L. R. A. 147); *City of Philadelphia v. Heirs of Girard,* 45 Pa. St. 9; *Adams Female Academy v. Adams,* 65 N. H. 225 (6 L. R. A. 785); *In re White's Trusts,* 33 Ch. Div. (1886) 449. Whether the doctrine has been adopted in this state or not, we find frequent reference thereto, as will appear from an examination of the following cases: *Miller v.*

*Chittenden,* 4 Iowa 252; *Lepage v. McNamara,* 5 Iowa 124; *Grant v. Saunders,* 121 Iowa 80; *In re Hubbell Trust,* 135 Iowa 637; *Wilson v. First Nat. Bank,* 164 Iowa 402; *Curtis & Barker v. Central Univ. of Iowa,* 188 Iowa 300. And in *Klumpert v. Vrieland,* 142 Iowa 434, the court said:

"The statute of charitable uses, known as statute 43 Elizabeth, though an amendment to the common law of England when enacted, is, in so far as consistent with our institutions, a part of the common law of this state."

As given effect generally by courts of equity, the rule does not violate the law of this state, nor is it inconsistent with our institutions; but, on the contrary, it is in harmony with the liberal attitude of the court in dealing with charitable trusts.

Counsel appear to agree that, if the mode provided is an essential part of the gift, and the only one the testator intended or at all contemplated, and if he had no general intention of giving his money to charity, then, if the particular mode fails, the court cannot supply another. Mr. Justice Gray, in *Jackson v. Phillips,* 14 Allen (Mass.) 539, discussing this question, said:

"It is accordingly well settled by decisions of the highest authority that, when a gift is made to trustees for a charitable purpose, the general nature of which is pointed out, and which is lawful and valid at the time of the death of the testator, and no intention is expressed to limit it to a particular institution or mode of application, and afterwards, either by change of circumstances the scheme of the testator becomes impracticable, or by change of law becomes illegal, the fund, having once vested in the charity, does not go to the heirs at law, as a resulting trust, but is to be applied by the court of chancery, in the exercise of its jurisdiction in equity, as near the testator's particular directions as possible, to carry out his general charitable intent."

Vice Chancellor Stevenson, in *Brown v. Condit,* 70 N. J. Eq. 440 (61 Atl. 1055), quoting with approval from *Biscoe v. Jackson,* 35 Ch. Div. (1887) 460, said:

"I quite agree that, if the mode of application is such an essential part of the gift that you cannot distinguish any general purpose of charity, but are obliged to say that that mode of doing a charitable act was the only one the testator intended or at

all contemplated, and that he had no general intention of giving his money to charity, then the court cannot, if the particular mode of doing it fails, apply the money *cy pres.*"

What, then, was the dominant purpose of the testator? Was it to provide, primarily, for the perpetual maintenance of the hotel under the name of the Ballingall House, or were the provisions of the will relating thereto intended to be treated as the method or mode of accumulating a fund with which to establish and maintain a foundling hospital and to benefit the other charities named? Referring to this provision of the will in *Phillips v. Harrow,* 93 Iowa 92, although the precise question now under consideration was not there involved, the court said:

"The requirement of the will that the Ballingall House and the tenements connected therewith shall be kept perpetually, and that a fund of $20,000 be provided, to preserve the property and make such improvements in the hotel buildings as shall be demanded by the growth of the city and the times, is merely a means to preserve the property in a condition to yield a revenue, and thus secure the charitable objects sought to be accomplished by the will. That the name 'Ballingall House' should be retained is not inconsistent with such objects, and imposes no burden on the trustee."

Counsel for appellant suggests that the first duty imposed upon the trustee is to perpetually keep up, maintain, and operate the hotel in the name it then bore, and next to accumulate a sinking and library fund; and that the charities named are not to profit until after these funds have been provided. It does not occur to us that the order in which these objects are named is of particular significance, or throws light upon the testator's intention. The gift to charity is of the income from the hotel. If, in the judgment of testator, a sinking fund was necessary, or the best method he saw for maintaining the hotel, the income from which was the principal sum to be used for the benefit of the charities named, it would be quite natural to first provide therefor, and later provide for the erection of a foundling hospital and the support of the other charities favored by the will.

The clause of the will requiring that the hotel be kept up perpetually and operated in the name designated is as follows:

"The duties and powers of said trustees shall be as follows: The Ballingall House and tenements connected therewith are under the supervision of said trustees to be kept up perpetually and forever, the hotel retaining the name which it now bears."

We are not inclined to the view that this language must be held to indicate that the dominant purpose of the testator was the perpetuation of his name, or that the gifts to charity were to fail if this direction of his will could not be carried out. Courts have not evinced a tendency, in arriving at the intention of the testator, to over-emphasize provisions found in wills requiring the use of a particular name in carrying out bequests. *Phillips v. Harrow*, supra; *Maxcy v. City of Oshkosh*, 144 Wis. 238 (128 N. W. 899); *Jones v. Habersham*, 107 U. S. 174 (27 L. Ed. 401); *MacKenzie v. Trustees of Presbytery*, supra.

Many authorities are cited by counsel for appellant which, it is urged, involve instruments containing provisions analogous to the paragraph of the will in question, wherein the doctrine *cy pres* was not invoked. Speaking in general terms, and without attempting further to particularize distinctions, the court declined to apply the doctrine in the cited cases because the gift was inadequate, or was only a contribution to a proposed charity, or the object was not charitable, or the instrument by its terms limited the use of the fund bequeathed to a particular designated purpose. *Bullard v. Inhabitants of Shirley*, 153 Mass. 559 (27 N. E. 766); *Gilman v. Burnett*, 116 Me. 382 (102 Atl. 108); *Teele v. Bishop of Derry*, 168 Mass. 341 (47 N. E. 422); *Gill v. Attorney General*, 197 Mass. 232 (83 N. E. 676); *Bowden v. Brown*, 200 Mass. 269 (86 N. E. 351); *Boston Safe Dep. Co. v. Attorney General*, 234 Mass. 261 (125 N. E. 392); *Allen v. Trustees of Nasson Institute*, 107 Me. 120 (77 Atl. 638); *Harris v. Neal*, 61 W. Va. 1 (55 S. E. 740); *Morristown Trust Co. v. Mayor*, 82 N. J. Eq. 521 (91 Atl. 736). Other courts are more liberal in the application of the rule, as the following citations will show: *Mason v. Bloomington Lib. Assn.*, 237 Ill. 442 (86 N. E. 1044); *Lewis v. Gaillard*, 61 Fla. 819 (56 So. 281); *In re Estate of Peabody*, 154 Cal. 173 (97 Pac. 184); *Nichols v. Newark Hospital*, 71 N. J. Eq. 130 (63 Atl. 621); *Rector, etc., of St. James Church v. Wilson*, 82 N. J. Eq. 546 (89 Atl. 519); *Adams v. Page*, 76 N. H. 96 (79 Atl. 837); *Christian v. Catholic*

*Church*, (N. J.) 110 Atl. 579; *Tincher v. Arnold*, 147 Fed. 665. It is a familiar doctrine that courts of equity look with favor upon bequests for charitable purposes, and will give effect thereto, if consistent with law; and to accomplish that purpose, the most liberal rules within the allowable limits of chancery jurisdiction will be resorted to. *Wilson v. First Nat. Bank*, 164 Iowa 402; *Klumpert v. Vrieland*, 142 Iowa 434; *Beidler v. Dehner*, 178 Iowa 1338; *In re Estate of Cleven*, 161 Iowa 289.

Counsel recognize that each case must be determined upon principle, according to its own peculiar facts. While all of the cases cited have been helpful, none are decisive of this case. The will under consideration contains no residuary clause or provision for reversion. Clearly, the testator did not contemplate that the provisions made by his will could not, in some way, be carried out, and that his property would ultimately pass to his heirs. The objects sought to be benefited have not failed. So far as they are concerned, there is no impediment in the way of carrying out the provisions of the will. If the court adopts the construction for which counsel for appellant contends, the scheme of the testator and the charitable bequests must alike fail. We are not advised as to the value of the hotel property, or what difficulties might be encountered by the trustees, if the court should direct that same be converted into cash, in carrying out the terms of the will; but we are firmly convinced that the dominant purpose and desire of the testator was to make provision in perpetuity for the public charities named. It may be conceded that a general charitable intention may not be inferred from any particular or isolated clause of the will, nor is this necessary. The testator did not foresee the early erection of a magnificent modern hotel in the city of Ottumwa, with which the Ballingall House could not profitably compete, and failed in specific terms to provide for the condition which has arisen; and if the charitable purposes of his will are to be carried out, some other mode than that provided must be adopted. As was said in *In re John's Will*, 30 Ore. 494 (36 L. R. A. 242), by the Oregon court:

"It is not within the ken of human ingenuity to devise a plan that may be observed in every particular in its execution; so that, if his particular method of administration should fail

in some particular, that would not give reason for voiding the trust.''

The will does not, in terms, limit the mode to that provided.

It is our conclusion that the dominant purpose of the testator was charitable, and that the provision for the creation of a sinking fund and the maintenance of the hotel should be treated as the mode provided therefor, and not as the essence of the bequest; and that the trust created has not failed, nor the title to the property passed to the testator's heirs. It follows that the judgment of the court below is—*Affirmed.*

WEAVER, C. J., LADD and ARTHUR, JJ., concur.