The complainants bring this bill asking for instructions concerning the disposition of certain funds which are now held under the following cirumstances. By the will of William H. High, executed May 15th, 1895, he provided as follows:
"Item Eighth: After paying all of the bequests herein mentioned, and the setting aside the amounts necessary to pay the several bequests contained in Item Fourth of this will, I hereby give and bequeath the remainder of all my real and personal property that I may die possessed of to establish an Old Men's Home for the admission of aged and feeble men, to be conducted similarly to the "Old Ladies Home" now in existence in this city, and it is my desire that the pastors of *Page 549 
the Church of the Redeemer, Second Presbyterian Church, St. Mark's Chapel, Trinity M.E. Church, and the First Baptist Church, all of this city, shall take the initiative and select the Board of Trustees, Managers, c., to conduct the same."
He died in 1899 and in 1906 the pastors mentioned in the will appointed trustees, of whom James G. Patton, one of the complainants, is now the survivor. The trustees organized a corporation known as the William High Home for the purpose of establishing and conducting a home for aged and feeble men in the city of Paterson. In 1908 the executor of William H. High paid over to the treasurer of the trustees approximately $13,000. It is conceded that this sum was insufficient to establish and maintain a home. The fund with its increments and also the gift of $1,500 from another source has accumulated in the hands of the corporation up to the present time and now amounts to approximately $35,000. The surviving trustee asks that he be authorized to pay one-half of the accumulated fund to each of the Little Sisters of the Poor of Paterson and to the Holland Home of Paterson. All the necessary parties are before the court including the heirs-at-law and next of kin of William H. High. These latter resist the application of the surviving trustee and contend that the gift under the eighth section of the will has failed and that the money was to be distributed to them as next of kin.
The doctrine of cy pres is now well established in this state. In MacKenzie v. Trustees of Presbytery of Jersey City,67 N.J. Eq. 652, the court says (at p. 676): "In Pennington
v. Metropolitan Museum of Art et al. (1903), 65 N.J. Eq. 11,
the present chancellor had before him a bill filed by the executors of Jacob S. Rogers for instructions respecting the administration of a trust of great value. Suffice it here to say that he dealt with the question (at page 22) after this fashion: `If trustees disclose a situation of their trust in which a slavish adherence to the terms of the trust will operate wholly to prevent the benefits intended by its creator, and they seek instructions and directions as to their duty, I think that instructions and directions for a course of conduct which, *Page 550 
though different from that prescribed by the terms of the trust, will actually carry out the intent of the creator, may well be grounded upon and sustained by the necessity of the case. The benefits intended for the beneficiaries are the main subjects of consideration. The modes in which those benefits may be attained are incidental, and necessity may require a change of mode in order to produce the intended effect.' Whereupon the chancellor referred the cause to a master to consider and report a scheme for the management of the trust fund.
"On the whole, we affirm that the judicial doctrine of cypres, as pruned and restrained by modern authorities English and American, and as affected by our own decisions, has a proper place in our jurisprudence, and that, after a proper inquiry, it may, if necessary, be applied to the management of the estate or fund in question."
The difficulty in applying the rule is in deciding whether a change from the specific method proposed by the donor to an alternative method will carry out his general charitable intent. In the instant case it is argued on behalf of the next of kin that the language used by the testator indicates an intention to provide a home for aged and feeble men which should be limited to men only and that the control of the institution should be Protestant; and that therefore the bequest is so limited that the testator's purpose cannot be carried out by dividing the fund between the two institutions, since both of them admit women as well as men and one of them is in addition under Roman Catholic control.
I do not consider these contentions sound. I think it appears that the general charitable purpose was to provide for the care of aged and feeble men. At the time that the will was executed there was no home in the city of Paterson which admitted such persons, although there was one for old ladies and the language of the will provides for the establishment of a similar institution. In my opinion the providing for the care of aged and feeble men was the paramount consideration and the general purpose of the bequest. The clause in question provides that it was the desire of the testator that *Page 551 
the pastors of certain named Protestant churches should select the board of trustees. It will be noted that there is no provision requiring the home to be named after the testator, or that the trustees should be limited to members of Protestant churches, or placing any restrictions upon the conduct or management of the home. The absence of any such limitations indicates that the chief if not the sole purpose of the bequest, was to provide for aged and feeble men, and that the other provisions merely provided a suitable method. See Rectors, c.,of St. James Church v. Wilson, 82 N.J. Eq. 546, and Nichols
v. Newark Hospital, 71 N.J. Eq. 130.
The Old Ladies' Home, the Holland Home and that of the Little Sisters of the Poor are and always have been nonsectarian as far as admissions are concerned. Both the Holland Home and Little Sisters of the Poor are well established and well conducted institutions, entirely suitable for the care of the persons sought to be benefited by the testator. Both of them pledge that any sums turned over to them herein shall be devoted exclusively to the care of men.
A decree will be advised accordingly approving the scheme proposed in the bill and directing distribution in accordance therewith.