[L. A. No. 4893. Department Two.—June 9, 1919.]

JOHN E. MILLER et al., Respondents, v. ALBERT SID-
NEY PITMAN et al., Appellants.

[1] ESTATES OF DECEASED PERSONS — DECREE OF DISTRIBUTION — COL-
LATERAL ATTACK.—A decree of distribution is not subject to col-
lateral attack, no matter how erroneously it may appear to depart
from the terms of the will devising and bequeathing the estate
distributed, if all of the interested parties have had due notice
of the petition.

[2] ID.—PETITION FOR DISTRIBUTION — NOTICE — PLEADING — PRESUMP-
TION.—The law does not require personal notice to be given of the
presentation and pendency of a petition for final distribution, and
where the complaint in an action to quiet title involving the scope,
effect, and finality of a decree of distribution fails to allege that
the notice required by law was not given, it will be presumed that
such notice was given.

[3] ID.—DISTRIBUTION OF RESIDUE OF ESTATE — CONTRAVENTION OF
TERMS OF WILL — CONCLUSIVE EFFECT.—A decree of distribution
which in terms declares that it is disposing of the "residue of the
estate" thereinafter "particularly described" as follows: "All of
said property to C. P., the widow of said E. W. P., deceased,"
viewed in the light of section 1666 of the Code of Civil Proce-
dure, in express terms distributes all of the property of the estate
to the widow without limitation and thereby confirms in her an
estate in fee simple absolute; and such decree, in the absence of
a showing or claim of extrinsic fraud or mistake, is irrevocable
save upon appeal within the time provided by law, even though in
contravention of the terms of the will.

APPEAL from a judgment of the Superior Court of Los
Angeles County. Fred H. Taft, Judge. Reversed.

The facts are stated in the opinion of the court.

Kendrick & Ardis for Appellants.

A. Moore, *in pro. per.*, R. A. Moore and Richard P. Woods
for Respondents.

LENNON, J.—This is an appeal from a judgment quieting
the plaintiffs' title to an undivided one-fourth of a certain
tract of land situate in the county of Los Angeles and award-
ing to the plaintiffs the sum of $1,750 for the use and occu-

pation of said lands for the period during which the trial court found the plaintiffs were entitled to the possession thereof.

The facts of the case, as revealed by the pleadings, proof, and findings, are generally these: In February, 1888, Elias W. Pitman died seised of a tract of land which included the land in suit. By his will, he left a life estate in the said land to his wife, Charlotte Pitman, whom he named as executrix, with remainders in fee to their children and to the heirs of their children's bodies. Under the terms of this will, the plaintiff John E. Miller, the orphaned grandson of Elias W. and Charlotte Pitman, who was at the time eleven years of age, was entitled to an undivided one-sixth interest in the total remainder, his sister to one-sixth, and the defendants Albert S. Pitman and Mary Cole, *née* Pitman, to one-third each. In March, 1888, the defendant Albert S. Pitman, son of Elias W. and Charlotte Pitman, was duly appointed the guardian of the plaintiff John E. Miller and of his sister, Mary Miller, and acted as such during their minority and, in fact, never was discharged. The will of Elias W. Pitman was duly admitted to probate upon the petition of Charlotte Pitman, as executrix. In due time, she petitioned the probate court for a decree of final distribution wherein she alleged, among other things: "That the said Charlotte Pitman, your petitioner, is, by reason of the provisions of the last will of said deceased, now on file in this court, entitled to the whole of the residue of said estate during her life time, and after her death to be equally divided among his said children." In November, 1891, the probate court made and entered its decree in the estate of Elias W. Pitman finally distributing "All of the said property to Charlotte Pitman, the widow of said Elias W. Pitman, deceased." Charlotte Pitman entered into possession of the land in suit under this decree of distribution and subsequently deeded a portion of it to the defendant Albert S. Pitman absolutely, leaving approximately two-thirds of the original acreage standing in her name. In 1900, the said Albert S. Pitman, desiring to sell the one-third so conveyed to him, requested the plaintiff Miller to join in the deed. Miller did so, as he testified, upon the representation of Pitman that if he would do so he, Pitman, would take this one-third of the land as his full share of the real property in the estate of Elias W. Pitman. In 1907, Charlotte Pitman

deeded the remaining two-thirds to the defendants Albert S. Pitman and Mrs. Cole, reserving, however, unto herself a life estate therein. Charlotte Pitman died in March, 1909. On December 18, 1909, the defendant Albert S. Pitman purchased the interest of Mrs. Cole, Charles Cole, her husband, joining in the deed. Since that time, Pitman has been in possession of the land, claiming title thereto under the conveyances to him from Charlotte Pitman and the Coles. The plaintiffs' complaint alleged, and the trial court found, that the defendants knew the terms of the will of Elias W. Pitman at all times after the probate thereof, and "willfully and fraudulently concealed said facts from the said John E. Miller," and, in effect, that said concealment was successful down to 1914. The court found that the plaintiff Miller was absent from Los Angeles County and resided in Oregon, Washington and Canada from 1907 to the spring of 1915, and, in the latter year, ascertained for the first time that his grandfather, Elias W. Pitman, had made him one of the devisees in his will. The plaintiff Moore claims title to a portion of the land in suit under a deed from the plaintiff Miller.

A first impression created by a cursory reading of the record is that the plaintiffs' cause of action proceeds in part upon the theory of a trust arising in favor of the plaintiff Miller as the result of a fraudulent concealment by Charlotte Pitman and the defendant Albert S. Pitman while standing in the relation of fiduciaries to the said Miller. A closer scrutiny of the record discloses that the plaintiffs' complaint is framed, as were the findings and judgment of the trial court, upon the theory that the probate court had no jurisdiction, under the issues presented by the petitions for the probate of the will of Elias W. Pitman and for the final distribution of his estate, to distribute to Charlotte Pitman any interest therein greater than a life estate, and that, as a consequence, the decree of distribution did not divest the plaintiff John E. Miller of the interest in the estate of Elias W. Pitman devised to him by the terms of the will and did not distribute to Charlotte Pitman the fee-simple title to the lands in suit. With this theory as a basis, the plaintiffs contended, and the trial court in effect further found, that the only interest, namely, a life estate, which Charlotte Pitman took under the decree of distribution, terminated at her death, thereby vesting the remainder over, to the extent of an undivided one-

fourth, in the plaintiff Miller in fee simple. Of course, if this theory were correct, it would follow, as the trial court ultimately concluded, that the defendants, as grantees of Charlotte Pitman, acquired no interest in or title to the lands in suit. In view of the evident and undoubted theory of the plaintiffs' case, as thus outlined, it is obvious that the facts relative to the alleged fraudulent concealment were pleaded, proven, and found solely for the purpose of tolling the statute of limitations and need not, therefore, be considered for any other purpose.

It thus appears that the paramount point presented upon the appeal involves the scope, effect, and finality of the decree of distribution which was made and entered in November, 1891, and never appealed from. The fundamental finding of the trial court to the effect that Charlotte Pitman took no more than a life estate by the decree of distribution is not supported by the evidence. The only evidence responding to this phase of the case consists of the will of Elias W. Pitman, the petition for its probate, the petition for the decree of distribution and the decree itself. Neither extrinsic fraud nor mistake in the procurement of the decree was alleged, shown or found. The decree is valid on its face. Clearly, the probate court had jurisdiction of the subject matter of the decree of distribution, and the fact that the decree erroneously construed the terms of the will did not operate to render the decree void. The time for appeal from the decree has long since expired. [1] It is well settled that a decree of distribution is not subject to collateral attack, no matter how erroneously it may appear to depart from the terms of the will devising and bequeathing the estate distributed, if all of the interested parties have had due notice of the petition. [2] The law does not require personal notice to be given of the presentation and pendency of a petition for final distribution, and, the complaint in the present case failing to allege that the notice required by law was not given, it will be presumed that such notice was given. (Code Civ. Proc., secs. 1666, 1668; *Daly* v. *Pennie*, 86 Cal. 552, [21 Am. St. Rep. 61, 25 Pac. 67]; *Lynch* v. *Rooney*, 112 Cal. 279, [44 Pac. 565]; *William Hill Co.* v. *Lawler*, 116 Cal. 359, [48 Pac. 323]; *Matter of Trescony*, 119 Cal. 568, [51 Pac. 951]; *Goldtree* v. *Allison*, 119 Cal. 344, [51 Pac. 561]; *Goad* v. *Montgomery*, 119 Cal. 552, [63 Am. St. Rep. 145, 51 Pac. 681]; *Jewell* v.

*Pierce,* 120 Cal. 79, [52 Pac. 132]; *Cunha* v. *Hughes,* 122 Cal. 111, [68 Am. St. Rep. 27, 54 Pac. 535]; *McKenzie* v. *Budd,* 125 Cal. 600, [58 Pac. 199]; *Toland* v. *Earl,* 129 Cal. 148, [79 Am. St. Rep. 100, 61 Pac. 914]; *Mulcahey* v. *Dow,* 131 Cal. 73, [63 Pac. 158]; *Keating* v. *Smith,* 154 Cal. 191, [97 Pac. 300]; *Estate of Learned,* 156 Cal. 309, [104 Pac. 315]; *Rountree* v. *Montague,* 30 Cal. App. 170, [157 Pac. 623]; *Beltran* v. *Hynes,* 40 Cal. App. 177, [180 Pac. 540].)

This brings us to a consideration of the legal effect of the language of the decree. In our judgment, it is susceptible of no construction save that it purports to, and does in fact, distribute all of the estate of Elias W. Pitman to Charlotte Pitman without limitation. In this behalf, it will be noted that the decree in terms declares that it is disposing of the "residue of the estate" thereinafter "particularly described" as follows: "All of said property to Charlotte Pitman, the Widow of said Elias W. Pitman, deceased." Section 1666 of the Code of Civil Procedure, which provides the requirements of a decree of distribution, declares that it "must name the persons and the proportions or parts to which each shall be entitled. . . . " [3] Viewed in the light of this code section, there is no escape from the conclusion that the decree in controversy in express terms distributed all of the property of the estate to Charlotte Pitman without limitation and thereby confirmed in her an estate in fee simple absolute. This decree, in the absence of a showing or claim of extrinsic fraud or mistake, was irrevocable save upon appeal within the time provided by law, even though it was in contravention of the terms of the will. (*McKenzie* v. *Budd, supra; Mulcahey* v. *Dow, supra.*) So long as this decree stands unimpeached by such fraud or mistake, and it has not been so impeached herein by any fact alleged in the pleadings, developed in the proof or found by the court, there is no theory upon which any right or title of the plaintiffs to the land in question can be predicated and sustained. It follows that neither the pleadings nor proof of the plaintiffs suffice to support an action to quiet title, and, consequently, the question of the statute of limitations, which was put in issue by the pleadings, need not now be considered.

This opinion might with propriety and perhaps in strictness should end here, but we do not wish to be understood as holding that the plaintiffs in the presence of the potential equities

of their case are entirely without remedy. Therefore, we are constrained to say that, if time has not confirmed a wrong, the plaintiff's case might very readily be made to proceed through the medium of appropriate pleadings upon the equitable theory which, while recognizing as a matter of law, the finality of the decree as a muniment of title in the defendants, nevertheless, impresses such title with an involuntary trust in favor of the plaintiffs by reason of extrinsic fraud, or mistake superinduced by such fraud, in the procurement of the decree coupled with the breach of a fiduciary relationship. (*Estate of Walker,* 160 Cal. 547, [36 L. R. A. (N. S.) 89, 117 Pac. 510].) In this behalf, it may not be amiss to note again that at the time of the presentation and granting of the petition for the decree of distribution the defendant, Albert S. Pitman, was the duly qualified and acting guardian of the person and estate of the plaintiff Miller. The decree being obviously erroneous, it was the undoubted duty of the defendant Pitman, as such guardian, to have instituted and prosecuted appropriate proceedings by appeal, or otherwise, to remedy the error. His failure as guardian to thus protect and preserve the interests of his ward having ultimately resulted to his own advantage, it would seem to be but just to make him a trustee to the extent that he profited by his default. True, the defendant Pitman did testify that he never knew that the plaintiff Miller was entitled to anything under the will, but, obviously, it was his business and duty as guardian to know the terms of the will.

The appellant assigns error in several of the rulings of the trial court concerning the admissibility of certain evidence. No argument, however, is made in support of these assignments and, therefore, we do not deem them worthy of discussion and decision.

The judgment appealed from is reversed.

Wilbur, J., and Melvin, J., concurred.

Hearing in Bank denied.

All the Justices concurred, except Melvin, J., and Olney, J., who were absent.