[Civ. No. 12514. First Dist., Div. One. Mar. 20, 1944.]

THE SOCIETY OF CALIFORNIA PIONEERS (a Corporation) et al., Respondents, v. R. D. McELROY, as Trustee, etc., et al., Appellants.

Eustace Cullinan for Appellants.

I. M. Peckham, Jesse H. Miller and Linforth, Cannon & Miller for Respondents.

WARD, J.—This is an appeal from a judgment and decree wherein the court, applying the equitable doctrine of *cy·pres,* ordered that a bequest of $25,000 "To the Grand Parlor of Native Sons of the Golden West, for cooperation with The Society of California Pioneers, in erecting a pioneer monument on Telegraph Hill in San Francisco" contained in the will of James D. Phelan, deceased, be divided equally between those two organizations, the part allotted to the Society of Pioneers to be used in acquiring "Californiana," and the part allotted to the Grand Parlor to be used in defraying the expense of marking historical places and points pertaining to the pioneer era of California.

Defendants are the trustees or their successors of a residuary trust created by the will of the deceased, and the beneficiaries thereof or their representatives. In addition to their answer defendant trustees filed a cross-complaint. Judgment being rendered in plaintiffs' favor both defendants and cross-complainants have appealed.

Prior to the institution of the present proceeding in equity, the probate court, by a decree of ratable distribution in the matter of said estate, distributed the above mentioned bequest "To the Grand Parlor of the Native Sons of the Golden West, in trust, for cooperation with The Society of California Pioneers, in erecting a pioneer monument on Telegraph Hill in San Francisco, twenty-five thousand dollars."

After the death of James D. Phelan and partly prior and partly after the above decree was made, through funds from a bequest by one Lillie Hitchcock Coit, deceased, plans were made and carried out for the erection of the Coit Memorial Tower upon the summit of Telegraph Hill. Owing to the character and limited extent of the area available, it would be quite impossible to erect another memorial, such as that evidently contemplated by the testator, upon the hill without obstructing the roadway leading to the summit and without

detracting from the beauty of the landscaping. In view of the changed conditions, therefore, since the creation of the trust and the making of the decree of ratable distribution, it is no longer reasonably possible to carry out the testator's intention or to execute the trust in accordance with the decree of ratable distribution.

By his will James D. Phelan had made many bequests for charitable purposes, including several to various units of the society of Native Sons, namely, ''to the Native Daughters' Children's Home Finding Society, Ten Thousand Dollars; to the Grand Parlor of the Native Sons of the Golden West and to the Grand Parlor of the Native Daughters of the Golden West, for charitable uses, Ten Thousand Dollars each; to the Pacific Parlor of the Native Sons of the Golden West Sick Benefit Fund, Twenty Thousand Dollars; I give outright to the Hall Association of the Native Sons of the Golden West of San Francisco, Ten Thousand Dollars; to the Bohemian Club of San Francisco, to the Trustees of the San Francisco Public Library and to the Board of Trustees of the California Palace of the Legion of Honor of San Francisco, for uses appropriate to their respective activities, Ten Thousand Dollars each.''

Immediately following the above is this provision: ''If for any reason any gift herein before made for any charitable purposes shall be illegal or inoperative then in such event I give an amount equivalent to the amount of each and all such gifts to R. D. McElroy, Noel Sullivan, T. B. Doyle and O. K. Cushing [parties originally named as trustees] absolutely and unconditionally.'' The will then provides: ''I hereby establish the James D. Phelan Foundation, the income of which is to be expended solely for charitable purposes, and in that behalf I give and bequeath to R. D. McElroy, Noel Sullivan, T. B. Doyle and O. K. Cushing, the survivors or survivor of them, and their successors, the sum of One Million Dollars ($1,000,000) and also all lapsed bequests (except as herein otherwise provided) in trust,'' etc.

The two corporations plaintiff in bringing this suit set up the impossibility of performance of the terms of the trust, and prayed for such a judgment as was afterwards rendered. The residuary trustees, cross-complaining, admitted that the monument trust had failed and prayed that the fund be paid over to them as such residuary trustees.

The appeal is taken on the judgment roll alone, appellants relying thereon without bringing up the evidence for the reason that the trial court declared in its findings that "Said Phelan never expressed orally or in writing any intention or understanding with respect to the sense in which he used the word 'monument' in his will, or as to the nature of said bequest otherwise than in the language contained in the will itself, but the interpretation placed by the court in these findings on said bequest and as to the meaning intended by said Phelan to be given to the word 'monument' in his will is based solely on the contents of the will and on the other facts recited and found in these findings."

The court found generally that for some time before the death of James D. Phelan both plaintiffs had considered a plan or scheme for the erection of a monument or memorial on the top of Telegraph Hill which should combine the features of a memorial to the pioneers of California with those of a museum for the fireproof housing of relics, objects and writings pertaining to the early history of California; that the testator was a member of the two organizations, knew of these plans, which were the only ones in which it was contemplated that both plaintiffs could cooperate; that he intended that the pioneer monument should include the above features, which are in accordance with the recommendations of plaintiffs' complaint; that the word "monument" in the will was not used in a restricted sense as relating to a shaft or statue, but, in accordance with the intentions of the testator, included features of the nature of those above set forth; "that his dominant purpose was primarily a permanent monument or memorial to the pioneers of California, which would combine the features of such a monument or memorial and a museum for the fireproof housing of relics, objects and writings pertaining to the early history of California and especially the historical collections of plaintiff The Society of California Pioneers; that the purpose that such monument or memorial should be on top of Telegraph Hill was secondary to such primary and dominant purpose.

"It is not true that said Phelan in making said bequest of said sum of $25,000 for the erection of a pioneer monument on Telegraph Hill in San Francisco intended to or did provide for any particular charity to be administered in a

particular way." As a conclusion of law the court stated that "this case is a proper one for the application of the doctrine of *cy pres;* . . . that the proposed application of said fund agreed upon between plaintiffs should be and it is approved; . . . that is to say, 50% of said fund shall go to and be paid to plaintiff The Society of California Pioneers as a permanent fund for the acquisition of historical material, documents and writings bearing on the history of California during the pioneer period; and that 50% of said fund, together with the accrued interest on the whole of said fund, shall go to and vest in plaintiff Grand Parlor of the Native Sons of the Golden West to be used . . . in erecting or installing plaques and markers commemorating important events in the pioneer period of California history; that none of the defendants have any interest in said fund; that plaintiffs and cross-defendants are entitled to judgment that defendants and cross-complainants . . . as residuary testamentary trustees of James D. Phelan, deceased, take nothing by their cross-complaint herein, but that plaintiffs be dismissed from said cross-complaint."

In asking for a reversal of the judgment appellants make the following contentions: (a) that the trial court erred in overruling the demurrer to the complaint; (b) extrinsic facts cannot alter plain language of a will containing no uncertainty on its face; (c) The Pioneer Society is not a legatee under the will; neither is it a trustee of the *cestui que trust;* (d) the doctrine of *cy pres* is not applicable in this case; (e) the testator had no general charitable intent in providing for a monument to be erected on Telegraph Hill; (f) the "monument" trust having failed, the trust fund belongs to and should be delivered to the residuary trustees.

The rule of *cy pres* is one of construction, the object of which is "to permit the main purpose of the donor of a charitable trust to be carried out as nearly as may be where it cannot be done to the letter." (14 C.J.S., p. 512, sec. 52.) A trust ceases if the object becomes impossible or unlawful. (Civ. Code, sec. 2279.) "If property is given in trust to be applied to a particular charitable purpose, and it is or becomes impossible or impracticable or illegal to carry out the particular purpose, and if the settlor manifested a more general intention to devote the property to charitable purposes, the trust will not fail but the court will direct the application of the property to some charitable purpose which

falls within the general charitable intention of the settlor.''
(Rest. of the Law, Trusts, sec. 399.) "Admittedly *cy pres*
is an unusual doctrine. Generally, if a court cannot en-
force or discover the intent of a donor or grantor, or of
parties to a contract, it gives no relief. It does not ordi-
narily substitute for the dubious intention of the party or
parties some scheme which the court thinks ought to have
been their intent. If the original intent is clear, but cannot
be carried out, the court does not usually substitute a second
best intent and give a judgment or decree carrying it into
effect.'' (2 Trusts and Trustees, Bogert, sec. 431, p. 1288.)
However, following precedent, and in accordance with care-
fully selected phraseology from previous opinions, the courts
of this country have gone far in substituting another chari-
table object when that designated is impossible of fulfillment.
There is substantial authority that this rule is not applied if
the donor in the gift instrument and the court in the decree
of distribution, direct a valid gift-over in the event that his
primary purpose cannot be given effect. (*In re Fletcher's
Estate,* 280 N.Y. 86 [19 N.E.2d 794].)

There appears in the will herein a purported gift-over
clause, heretofore referred to, and in the decree of distribu-
tion a so-called "catch all" clause. This "catch all"
clause was not made a part of the order of distribution
to respondents. So far as this record shows, the trustees
failed to assert the gift-over or "catch all" clause in the
immediate distribution to appellants. *In re Fletcher's
Estate, supra,* contains language of assistance to appellants,
but that was a case wherein there was a motion to modify
or "reopen" a decree. (*In re Fletcher's Estate,* 166 Misc.
486 [2 N.Y.S.2d 771].) In the decision in 280 N.Y. 86
[19 N.E.2d 794] it was the will that was interpreted and not
the final decree.

█ A court may interpret the language of a will to deter-
mine whether the rule of *cy pres* may be invoked, but if the
estate has been distributed and the decree of distribution
has become final, then it is the decree and not the will that
must be interpreted.

Assuming, without deciding, that the rule announced in
the Fletcher case is sound, it has no application here. In
the present case respondents specifically contend that neither
the executors nor the trustees nor the residuary beneficiaries
asserted any rights against the ratable distribution in the

probate proceedings. The decree, not made a part of the present transcript on appeal except by reference, has become final. The cross-complaint alleges: "There was not distributed, in the matter of the estate of said James D. Phelan, deceased, by any decree of distribution, partial, ratable or final, to R. D. McElroy, Noel Sullivan, T. B. Doyle and O. K. Cushing, or any of them, absolutely and unconditionally, or otherwise, in their individual capacities, or otherwise than as trustees of said residuary trust, any reversionary interest in said sum of $25,000.00 which was by the said decree of ratable distribution, referred to in paragraph III above, to which reference is hereby made, distributed to the Grand Parlor, in trust, for cooperation with the Society, in erecting a pioneer monument on Telegraph Hill in San Francisco, nor was there distributed, by said court in the matter of said estate, by any decree of distribution, partial, ratable or final, to R. D. McElroy, Noel Sullivan, T. B. Doyle and O. K. Cushing, or any of them, absolutely and unconditionally, or otherwise, an amount equivalent to, or as an equivalent of, the amount of such legacy of $25,000.00 to the Grand Parlor." The findings set forth that "It is true that on January 19, 1933, the Superior Court of the State of California in and for the City and County of San Francisco in the matter of the estate of said Phelan made its decree of settlement of first and final account and final distribution whereby it distributed to defendant R. D. McElroy, Noel Sullivan, T. B. Doyle and O. K. Cushing, and their successors, as trustees of said residuary trust, the entire residue and remainder of the estate of said Phelan not otherwise distributed by any decree of distribution theretofore made in the matter of said estate, together with all property not then known or discovered or not described in said decree belonging to said Phelan or in which said Phelan in his lifetime or his estate after his death had or acquired any interest, and that said decree has become final.

"It is not true that the residue so distributed to defendants R. D. McElroy, Noel Sullivan, T. B. Doyle and O. K. Cushing, and their successors, as trustees of the residuary trust under the will of said Phelan, included all or any of any reversionary interest in said bequest or fund of $25,000 which was distributed to plaintiff Grand Parlor of the Native Sons of the Golden West by the decree of ratable distribution made in said Phelan's estate on July 29, 1931.

"It is true that in the matter of the estate of said Phelan there was not distributed by any partial, ratable or final decree of distribution to R. D. McElroy, Noel Sullivan, T. B. Doyle and O. K. Cushing, or any of them, absolutely and unconditionally or otherwise, in their individual capacities or otherwise, or as trustees of said residuary trust or otherwise, any reversionary or other interest in said sum of $25,000 which was by said decree of ratable distribution made on the 29th day of July, 1931, distributed to plaintiff Grand Parlor, in trust, for cooperation with plaintiff The Society of California Pioneers in erecting a pioneer monument on Telegraph Hill in San Francisco."

After a final decree of distribution a probate court or a court of general jurisdiction retains the power to compel the distribution of trust property in accordance with the decree. (*Estate of Evans*, 62 Cal.App.2d 249 [144 P.2d 625].)

In the present appeal we are prohibited from going back to the terms of the will. Right or wrong the decree controls unless it is void on its face. (Prob. Code, sec. 1123; *Crew* v. *Pratt*, 119 Cal. 139 [51 P. 38]; *Keating* v. *Smith*, 154 Cal. 186 [97 P. 300]; *Manning* v. *Bank of California*, 216 Cal. 629 [15 P.2d 746]; *Security-First National Bank* v. *Superior Court*, 1 Cal.2d 749 [37 P.2d 69]; *Estate of Richards*, 17 Cal.2d 259 [109 P.2d 923].) The decree in which we are interested has become final. In *McLellan* v. *McLellan*, 17 Cal.2d 552, 553-554 [110 P.2d 1034], the court said: "The decree of distribution has long since become final. It determined the persons to whom the estate should be distributed and also the amount to which each person was entitled. If there was any error in the decree, the remedy was by appeal." (*Carr* v. *Bank of America etc. Assn.*, 11 Cal.2d 366 [79 P.2d 1096, 116 A.L.R. 1282].)

The decree of the probate court was a determination of the rights of the parties. Appellants state that they "are not claiming title under the gift-over provision in the Phelan will. They are claiming as residuary trustees under the catch-all clause in the final decree of distribution," and that the error of respondents' position "lies in assuming that the decree of ratable distribution conveyed the 'whole property', that is complete unlimited ownership of the $25,000 fund, to the Grand Parlor."

Respondents contend that "The court by its decree has

thrown the property out of court, and has stripped itself of all jurisdiction over the subject matter.'' The terms of the decree provide distribution ''To the Grand Parlor of the Native Sons of the Golden West in trust for cooperation with the Society of California Pioneers in erecting a pioneer monument on Telegraph Hill in San Francisco, $25,000.'' There is no condition attached, and no right of reverter is reserved in the decree. A gift-over, or language equivalent thereto, is not mentioned in the decree. ■ The decree is the measure of the rights of the parties, unless it should appear, which the record does not disclose, that fraud concealed a fact which caused the court in the decree of distribution to eliminate the possible reversionary interest as set forth in the will. (*Miller* v. *Pitman,* 180 Cal. 540 [182 P. 50].) In the present proceeding there is no question raised as to the sufficiency of notice, if any was required before the signing and filing of the final decree. (*Westphal* v. *Westphal,* 20 Cal.2d 393 [126 P.2d 105].)

In *Mitchell* v. *Bagot,* 48 Cal.App.2d 281 [119 P.2d 758], no mention of a trust was found in the will, but there was in the decree. At page 285 the court said: ''There is no rule of law that will permit a court sitting in equity to declare a decree of distribution void because it does not conform to the provisions of the will. If such were the law there would be no principle that the decree is conclusive as against collateral attack even though in contravention of the terms of the will. The rule is well settled that once the decree of distribution becomes final it becomes the measure of the rights of the beneficiary and is immune from collateral attack even though in contravention of the terms of the will.'' In *Miller* v. *Pitman, supra,* the court said (p. 543): ''Clearly, the probate court had jurisdiction of the subject matter of the decree of distribution, and the fact that the decree erroneously construed the terms of the will did not operate to render the decree void. The time for appeal from the decree has long since expired. It is well settled that a decree of distribution is not subject to collateral attack, no matter how erroneously it may appear to depart from the terms of the will devising and bequeathing the estate distributed, if all of the interested parties have had due notice of the petition.'' (See *Crew* v. *Pratt, supra; Gladding* v. *Superior Court,* 7 Cal.2d 408 [60 P.2d 857] ; *Estate of McCarthy,* 36 Cal.App.2d 194 [97 P.2d 480].) Under the authorities mentioned we

feel compelled to hold that although the trial court construed the will and the decree, it is the decree which controls and the interpretation of the will must be disregarded.

█ If the provisions of the decree determine this matter, as we hold, then the appellants have no interest in the question whether the probate court was justified in applying the rule of *cy pres* in its disposition of the $25,000 fund. In *O'Hara v. Grand Lodge, I.O.G.T.*, 213 Cal. 131, 139 [2 P.2d 21], the court said: "However, even if defendant be treated as the creator of this trust, it does not appear what standing it has in this action to claim any interest in the real property. Defendant parted with its entire interest in the property for a valuable consideration, subject to the trust, and retained no reversionary interest therein. Under such circumstances, it has no standing in a court of equity, except as a relator, to attempt to compel the proper execution of the trust, or to claim any interest in the trust property. The law is well settled that when property has become fully vested in trustees for a valid charitable purpose, neither the creator of the trust nor his heirs or assigns have any standing in court in a proceeding to compel the proper execution of the trust, except as relators. (Perry on Trusts, 7th ed., p. 1255, sec. 732-A.)"

█ The rule of *cy pres* is applicable here. The appropriate disposition of the property thereunder is primarily a matter in the discretion of the trial court. In the absence of any objection by the attorney general or by The Society of California Pioneers, we do not deem it proper to interfere with the conclusion here reached in this case.

The judgment is affirmed.

Peters, P. J., and Dooling, J. pro tem., concurred.

A petition for a rehearing was denied April 19, 1944, and appellants' petition for a hearing by the Supreme Court was denied May 18, 1944.