[L. A. No. 19393. In Bank. Dec. 17, 1946.]

Estate of GEORGE E. LORING, Deceased.

SARAH M. LORING et al., as Trustees, Petitioners and Respondents, v. TOWN OF KINGSLEY, Appellant; BRAILLE INSTITUTE OF AMERICA, INC., et al., Contestants and Respondents.

SARAH M. LORING et al., Appellants, v. TOWN OF KINGSLEY et al., Respondents.

BRAILLE INSTITUTE OF AMERICA, INC., Appellants, v. TOWN OF KINGSLEY et al., Respondents.

Newlin & Ashburn and Paul Sandmeyer for Appellant Town of Kingsley, Iowa.

O'Melveny & Myers, Louis W. Myers, Fred H. Schmidt and Pierce Works for Appellants Sarah M. Loring et al.

Tanner, Odell & Taft and Robert A. Odell for Appellant Braille Institute of America, Inc.

TRAYNOR, J.—George E. Loring died testate leaving the residue of his estate to trustees whom he directed to pay within five years of his death bequests aggregating $111,000. Of that amount the Town of Kingsley, Iowa, was to receive $75,000 for the construction and maintenance of a hospital; Braille Institute of America, Inc., was to receive $10,000; and the balance with the exception of a bequest of $5,000 to a stranger to his blood, was to go to nine nieces, nephews and grandnephews of the testator. Within the same period of time his sister was to receive the remainder of the trust estate and the trust was thereupon to terminate. The foregoing dispositions were incorporated in the decree of final distribution under which the trustees received assets valued at more than $150,000, and that decree became final. Less than three years thereafter and before any payment had been made by the trustees, the value of the trust estate had shrunk to approximately $55,000. The trustees therefore petitioned the probate court for instructions as to the distribution of that amount among the beneficiaries of the trust. Separate answers were filed by the Town of Kingsley, the Braille Institute and a group of beneficiaries comprising testator's sister, one of his nieces and his two grandnephews. The latter group will hereinafter be referred to as the Lorings. The court held that the provisions of section 41 of the Probate Code restricting gifts to charities to one-third of the testator's estate were applicable to the bequests to the Town of Kingsley and the Braille Institute and accordingly instructed the trustees to distribute to them one-third of the aggregate of the amount now available for distribution plus approximately $11,000 previously dis-

tributed during probate plus any refund of federal estate tax. Of the amount so distributable to them the Town of Kingsley was to receive 15/17 and the Braille Institute 2/17. The court further directed that the individual beneficiaries be paid in full and that the residue be delivered to testator's sister. The Town of Kingsley and the Braille Institute appeal from the order insofar as it limits them to one-third of the estate. The Lorings appeal from the order insofar as it directs that any part of the trust estate be distributed to the Town of Kingsley.

The Lorings contend not only that the testator could not leave more than one-third of his estate to charities, but that he could not leave any property in this state to a municipal corporation of another state; that the decree of distribution determined neither of these issues; and that in any case the kindred of the testator should be paid in full before any payment is made either to the town or to the institute, for section 752 of the Probate Code requires legacies to nonkindred to abate before legacies to kindred abate. The town contends that the decree of distribution is res judicata as to its right to take at all under the will of a California testator, as to its right and that of the institute to take more than one-third of his estate, and as to their right to share proportionately with the other beneficiaries in the available funds, and that in any event the will of the testator expressed the intention that no preference be given to any beneficiary of the trust. The institute joins in these contentions.

It is settled, and the Lorings concede, that a decree of distribution that has become final is a conclusive determination of the terms and validity of a testamentary trust and of the rights of all parties thereunder. (*Estate of Easter,* 24 Cal.2d 191, 194 [148 P.2d 601]; *Cook* v. *Cook,* 17 Cal.2d 639, 652 [111 P.2d 322]; *McLellan* v. *McLellan,* 17 Cal.2d 552, 553 [110 P.2d 1034]; *Manning* v. *Bank of California,* 216 Cal. 629, 634 [15 P.2d 746]; *Whittingham* v. *California Trust Co.,* 214 Cal. 128, 132 [4 P.2d 142]; *Luscomb* v. *Fintzelberg,* 162 Cal. 433, 438 [123 P. 247]; *Keating* v. *Smith,* 154 Cal. 186, 191 [97 P. 300]; *Matter of Trust of Trescony,* 119 Cal. 568, 570 [51 P. 951]; *Goad* v. *Montgomery,* 119 Cal. 552, 557-8 [51 P. 681, 63 Am.St.Rep. 145]; *Goldtree* v. *Allison,* 119 Cal. 344, 345 [51 P. 561]; *Crew* v. *Pratt,* 119 Cal. 139, 151 [51 P. 38]; *Estate of Lingg,* 71 Cal.App.2d 403, 409 [162 P.2d 707];

*Estate of White,* 69 Cal.App.2d 749, 755 [160 P.2d 204] ; *Society of Cal. Pioneers* v. *McElroy,* 63 Cal.App.2d 332, 340 [146 P.2d 962] ; *McGavin* v. *San Francisco P. O. A. Sec.,* 34 Cal.App. 168, 173 [167 P. 182].) The Lorings contend, however, that that determination does not conclude the beneficiaries of a testamentary trust, for the beneficiaries of such a trust are not parties to the distribution proceedings and in fact have no rights as beneficiaries until the trust is created by distribution of the trust assets to the testamentary trustee. They concede that under section 1020 of the Probate Code they could have appeared in the distribution proceedings as persons ''interested in the estate,'' but contend that they were not required to do so and that they lost none of their rights for not appearing therein. To bolster their contention that they were not parties to those proceedings they further contend that they could neither have petitioned for distribution nor sued the executors after distribution for their share of the estate. They point out finally that section 1021 of the Probate Code provides that the decree shall be conclusive only as to the rights of ''heirs, devisees and legatees.''

 The administration of a decedent's estate involves a series of separate proceedings, each of which is intended to be final (*Estate of Davis,* 151 Cal. 318, 323 [86 P. 183, 90 P. 711, 121 Am.St.Rep. 105]), not only as to the parties who appear therein, but also as to all persons ''interested in the estate'' whose rights may be affected, although they did not appear therein. In fact, it is undoubtedly because all such persons were to be bound by various orders and decrees entered in the course of the administration of the estate, that the Legislature expressly provided that they might appear and protect their rights in the proceedings that lead to such orders and decrees. (See Prob. Code, §§ 361, 370, 407, 442, 522, 584, 681, 756, 810, 831, 841, 860, 921, 922, 927, 1000, 1010, 1020, 1200.) Thus, section 1020 of the Probate Code does more than merely give, as the Lorings contend, a beneficiary an opportunity to litigate before the final distribution of the estate, the question as to his rights under the trust that he would otherwise litigate at some later date and that he remains entitled to litigate at such later date. It assumes that these rights will necessarily be adjudicated in the distribution proceedings and it is for that reason and because a beneficiary would otherwise have no opportunity to be heard, that he is given the opportunity to appear in those proceedings.

Section 1020 of the Probate Code requires that the estate be distributed only after notice has been given as provided in section 1200 of that code. The Lorings point out that under the latter section and section 1202 of the Probate Code they could have asked that special notice of the distribution proceedings be given them and contend that they are not bound by those proceedings, since they did not choose to ask for such notice. Section 1200 provides, however, in addition to the special written notice that any person interested in the estate may request, for a posted notice to "all persons interested to appear . . . and show cause . . . why the order should not be made." Section 1200 further provides that, if the court finds in its order that notice has been regularly given, that order, "when it becomes final, shall be conclusive upon all persons." A posted notice is therefore sufficient to bind a beneficiary and it appears that it is because the Legislature contemplated that he would be bound by such notice that provision was also made as a protection against possible unfairness for him to request, if he wished to do so, that he be given special written notice of the proceedings.

The Lorings contend that a decree of distribution is conclusive only as to the rights of heirs, devisees and legatees; that a beneficiary under a testamentary trust belongs to none of these classes; and that he should no more be bound by the decree than the creditor or assignee of an heir or legatee or the beneficiary of a constructive or resulting trust. In this connection the Lorings rely upon a series of cases in which this court stated that, although a decree of distribution is conclusive as to the rights of heirs, devisees and legatees, "it is conclusive against them only *as* heirs, legatees, or devisees, —only so far as they claim in such capacities." (*Chever* v. *Ching Hong Poy,* 82 Cal. 68, 71 [22 P. 1081] ; see, also, *Kingsbury* v. *Ross,* 217 Cal. 484, 486 [19 P.2d 784] ; *Parr* v. *Reyman,* 215 Cal. 616, 619 [12 P.2d 440] ; *Cooley* v. *Miller & Lux,* 156 Cal. 510, 515 [105 P. 981].) These cases all involved a situation in which an heir, devisee or legatee conveyed his share in the estate before the decree of distribution. They hold that that decree is not conclusive as between such heir, devisee or legatee and his assignee and with respect to the rights arising under the assignment, even though the assignee is also an heir, devisee or legatee of the decedent. It is settled, however, that the assignee is bound by the decree insofar as it

determines the rights that his assignor would have in the estate had no assignment been made. (*William Hill Co.* v. *Lawler*, 116 Cal. 359, 362 [48 P. 323].) In *Martinovich* v. *Marsicano*, 137 Cal. 354 [70 P. 459], upon which the Lorings also rely, a judgment creditor of a devisee secured a lien upon that devisee's share of the estate before the decree of distribution. This court held that the subsequent distribution of that share to the devisee did not discharge the creditor's lien. It was pointed out that "the expression in some of . . . [the] cases to the effect that under the notice for distribution the whole world is brought before the court, and that every person entitled to assert a claim against the estate must present the same or lose his right thereto, is to be construed in connection with the authority of the court over the subject-matter before it. The court has jurisdiction to distribute only the estate of which the decedent was possessed at the time of his death, and it is only a claim against that estate, or for some portion of it, for which it can make provision in its decree. As it can exercise this jurisdiction over only the persons to whom the estate is to be distributed, it is only these persons who can be affected by the notice or required to give it any attention." (137 Cal. at p. 359.) Thus, none of these cases support the Lorings' position, but merely emphasize that, as this court said in *In re Burdick*, 112 Cal. 387, 393 [44 P. 734], "the decree of distribution is conclusive only as to the succession or testamentary rights."

There is a clear distinction between the position of the beneficiary of a testamentary trust and the position of the beneficiary of a constructive trust under an agreement between a testator and his devisee that the latter will hold the property devised as trustee. The interest of the beneficiary of a constructive trust does not arise under the will or the laws of intestate succession. (*Sears* v. *Rule*, 27 Cal.2d 131, 139 [163 P.2d 443] and cases there cited.)

If the Lorings' contention that a beneficiary under a testamentary trust is neither an heir, nor a legatee, nor a devisee within the meaning of section 1021 of the Probate Code is now reexamined in the light of the cases holding that, although persons without the scope of testamentary or intestate succession are not bound by the decree, persons within that scope are bound thereby, the conclusion is inevitable that such beneficiary must be regarded as a legatee or devisee under that section. The Lorings point out that elsewhere in the Probate

Code reference is made both to heirs, devisees, legatees and to beneficiaries under a trust (e. g., § 1202). Whatever be the meaning of the words "heirs, devisees and legatees" in other parts of the code, however, they were intended in section 1021 to cover beneficiaries under a testamentary trust as well as all other persons who may have acquired rights to the property of a decedent under his will or under the rules of intestate succession. This conclusion is strengthened by the fact that the beneficiary of a testamentary trust may petition for distribution of the estate to the testamentary trustee (*Estate of Baldwin,* 21 Cal.2d 586, 592 [134 P.2d 259]; *Estate of Marre,* 18 Cal.2d 184, 190 [114 P.2d 586]; *Estate of Friedman,* 171 Cal. 431, 441 [153 P. 918]; *In re Mackay,* 107 Cal. 303, 307 [40 P. 558]; *Estate of McGirl,* 125 Cal.App. 310, 313 [13 P.2d 746]), although section 1020 of the Probate Code only provides that such petition can be filed by "the executor or administrator, or . . . any heir, devisee or legatee, or his assignee, grantee or successor in interest. . . ."

██ The Lorings further contend that, although the decree of distribution is conclusive as to the rights of the beneficiaries of a testamentary trust, it is conclusive only as to those rights that were necessarily in issue in the distribution proceedings, and that none of the rights now being asserted are such as were or must be deemed to have been in issue therein. They concede, as they must, that if the trust provisions of the will were either entirely valid or entirely void, the decree distributing the trust estate to the trustee would, once final, conclusively establish the validity of the trust, for there can be no distribution to the trustee unless the trust is valid. ██ Similarly, if the trust were of such a nature that in case of its partial invalidity the trust estate would be reduced and the property involved would go to others than the trustee, a distribution of the whole to the trustee would be conclusive. ██ The Lorings contend, however, that in the present case the provisions of the trust were such that the entire trust estate would have been distributed to the trustees, regardless of the invalidity of the bequests to the town and the institute, so that there was no need for the probate court to pass upon their validity in the distribution proceedings. It is true that a determination by the probate court of the partial or total invalidity of the charitable provisions of the trust would simply have increased the share of the residuary beneficiary. It would have increased

it, however, only on the assumption that the provisions in favor of the residuary beneficiary were themselves valid. Although the provisions in favor of decedent's sister appear to be valid, the fact remains that it was necessary for the probate court to pass upon their validity before it could decide that the other provisions of the trust need not be passed upon. The logic of the Lorings' position would thus lead us to make a distinction between cases in which the testamentary trust contains no residuary clause and in which the decree of distribution is therefore conclusive as to the validity of all the provisions of the trust and cases in which the trust contains a residuary clause and the decree is conclusive only as to the validity of that clause. Moreover, the question is not whether it was proper for the probate court to pass upon the validity of all the provisions of the trust, but whether, assuming that it did, its determination is conclusive. Since the court had jurisdiction to pass upon the validity of at least the residuary provisions of the trust, it clearly had jurisdiction to pass upon the validity of the other provisions thereof. Although the Lorings contend that it did not pass upon the validity of the other provisions the wording of the decree compels the conclusion that it did. It may well be that in doing so it failed to consider the provisions of the Probate Code restricting charitable bequests to one-third of the estate and erroneously held all the provisions of the trust to be valid. ▮ It is settled, however, that, once final, an erroneous decree of distribution, like any other erroneous judgment, is as conclusive as a decree that contains no error. (*Estate of Goldberg,* 10 Cal.2d 709, 713 [76 P.2d 508] ; *Manning* v. *Bank of California, supra,* 216 Cal. 629, 634; *Luscomb* v. *Fintzelberg, supra,* 162 Cal. 433, 438; *Keating* v. *Smith, supra,* 154 Cal. 186, 191; *McGavin* v. *San Francisco P. O. A. Soc., supra,* 34 Cal.App. 168, 173; see 11B Cal.Jur., Executors and Administrators, § 1296.)

The Lorings rely upon *Estate of Campbell,* 175 Cal. 345 [165 P. 931]. In that case this court reversed a decree of partial distribution that gave the heir at law of the testator two-thirds of her estate on the ground that her will was invalid to that extent. The will provided for a trust for the life of a certain beneficiary with remainder to charities under certain contingencies. This court held first that, since the charitable provisions were not part of the trust, the heir at law could in no case receive two-thirds of the estate free of that.

trust, and second that, the contingencies upon which the gift to charities depended were of such a nature that it could not be determined at that time whether that gift exceeded one-third of the estate. It was held accordingly that "the only way in which the rights of all parties can be fully protected is at this time to distribute all the property to the trustee for the purposes of the trust, reserving the matter of further distribution until the termination of the trust, at least insofar as the charitable bequest is concerned." (175 Cal. at p. 352.) It may be that further distribution should have been similarly reserved in the present case. It was not, however, nor was any appeal taken from the decree providing that the Town of Kingsley was to receive $75,000 and the Braille Institute $10,000.

The Lorings contend that the issues in the present case arose after the decree and because of a change in circumstances unforeseen at the time it was rendered; that these issues are cognizable in equity only; and that the probate court has no equity jurisdiction, save the limited jurisdiction that it can exercise after distribution under the provisions of section 1120 of the Probate Code. They further contend that it is that limited jurisdiction that the court should now exercise and that to hold that the decree of distribution is res judicata as to the issues in the present case would render section 1120 meaningless, for it would give the court no jurisdiction except to "rubber-stamp" the decree of distribution. It must be conceded that circumstances now are different from those at the time of the decree and that the probate court has jurisdiction to determine in the light of the changed circumstances how to divide the trust estate among the beneficiaries. It cannot make that determination, however, by reopening issues that were conclusively passed upon in the distribution proceedings. Section 1120 itself contemplates that the exercise of the court's equity jurisdiction is so limited, for it provides that the court may determine to whom the property shall pass upon the termination of the trust, "to the extent that such determination is not concluded by the decree of distribution."

It is further contended that since the assets of the trust estate are insufficient to pay all the beneficiaries of the trust in full, preference in such payment must be given to the kindred of the testator under Probate Code section 752. The Lorings rely on *Estate of Wever* (12 Cal.App.2d 237, 243

[55 P.2d 279]) wherein it was held that under this section, in the absence of a different intent expressed in the will, legacies to kindred of the testator are to be given preference over other legacies of the same class where the property at the time of the decree of distribution is insufficient to pay all such legacies in full. Section 752, however, has no application to a depreciation in the value of trust assets after those assets have been distributed to the trustees. Its place in the Probate Code indicates that it applies only to proceedings in the course of the administration of the estate. Although testamentary trusts are, for purposes of convenience, placed under the supervision of the probate courts (Prob. Code, § 1120), the substantive law governing such trusts after the final decree of distribution is the law of trusts and not the law of wills. This law, as respects this case, is no different from that applicable to an *inter vivos* trust. Clearly section 752 would not determine the shares of beneficiaries in the event of depreciation of the corpus of an *inter vivos* trust. The decree of final distribution alone is now the measure of the rights of the beneficiaries of the trust and, in the absence of any provision therein as to any preference among beneficiaries, they must share the loss ratably.

Aside from the question of the finality of the decree of distribution, it is contended that the gift to the town was intended primarily to establish a memorial to the testator and that since only a smaller sum is now available for building, furnishing, and maintaining the hospital, it would be an erroneous application of the *cy pres* doctrine to uphold the gift to the town. This contention is based on the fact that the decree of distribution, in the terms of the will, provides that the hospital will be known as the "George E. Loring Hospital." It is contended that, because a memorial as elaborate as that anticipated by the testator cannot be constructed, the gift must fail. The fact that, in making a gift to establish an institution that is otherwise charitable, the donor provides that the institution shall be named for him or some other party does not indicate a lack of charitable intent. (*Parsons* v. *Childs,* 345 Mo. 689, 698 [136 S.W.2d 327]; *Noel* v. *Olds,* 138 F.2d 581, 585, and cases there collected.) Such a requirement is regarded as part of the scheme of administration rather than the inducement for the gift. (*Village of Hinsdale* v. *Chicago City Missionary Society,* 375 Ill. 220, 234 [30 N.E.2d 657].)

It is ordinarily unnecessary to go behind the decree of distribution to determine the charitable intention of the testator. (See *Society of Cal. Pioneers* v. *McElroy*, 63 Cal. App.2d 332, 338 [146 P.2d 962].) Even if the decree of distribution is considered equivocal in this respect, the evidence of the testator's purpose in providing for the hospital supports the conclusion that he had a charitable intent. The evidence shows that the testator had been reared in the Town of Kingsley and made most of his fortune there. It does not follow that because he wanted the hospital named after him he was not concerned with the welfare of the inhabitants of the town. In any event, in view of the general rule that in case of doubt a gift must be interpreted in favor of a charity (*Collier* v. *Lindley*, 203 Cal. 641, 654 [266 P. 526]; *O'Hara* v. *Grand Lodge, I. O. G. T.*, 213 Cal. 131, 141 [2 P.2d 21]; Zollman, American Law of Charities, §§ 569-571), we cannot hold that the naming of the hospital indicates a lack of charitable intention, or shows that, had he considered the matter, the testator would have preferred no hospital to the less imposing structure that may be constructed with the funds available.

A further issue arising from the insufficiency of the trust assets to carry out completely the express provisions of the decree of distribution remains for decision. The Lorings contend that the testator had no general charitable intention, which is normally considered a requisite to the judicial application of the *cy pres* doctrine (see, cases collected, 74 A.L.R. 671; 39 Col.L. Rev. 1358), that his intention was specific, and that since it cannot be literally carried out, the lack of a general charitable intention precludes any modification of the trust. This contention is based primarily on the provision in the decree of distribution, following the language of the will, that, if within two years after notification by the trustees that the specified sums were available, the town fails to secure the required site for the hospital, "then this bequest shall absolutely lapse and the said sum of $75,000 provided for and not applied according to this trust for said hospital and heating plant, shall thereupon pass under the residuary clause of decedent's will." Since the funds are not to be applied to a different charitable purpose, if the town fails to secure a site as required by the decree, it is reasonable to construe this provision as precluding their application to a different charitable purpose, if for other reasons the particular purpose of

the testator cannot be carried out. It does not follow, however, that the particular purpose of the testator cannot be carried out because there are less funds available than he had contemplated. It is sufficient if that purpose can be substantially carried out.

The *cy pres* doctrine has meant many things to many courts and its limits have rarely been defined. (See 2 Bogert, Trusts and Trustees, 1295 et seq.; 3 Scott on Trusts 2104.) The Restatement limits the doctrine to the rule that a court of equity will carry out the general charitable intention of the donor, when his specific purpose becomes impossible or impractical of fulfillment, by directing the application of the property to some charitable purpose that closely approximates his general charitable intention. (Rest. Trusts, § 399; see Bogert, *Op. cit. supra* at 1287.) If the doctrine is confined within these limits, it follows that, if the charitable intention of the donor is specific and it becomes impossible or impracticable to fulfill it, a provision in the trust for a gift over in the event of the failure of the particular charitable purpose prevents the application of the *cy pres* doctrine.

The specific charitable purpose does not become impossible or impractical of fulfillment, however, simply because it cannot be carried out in the exact terms of the gift. Many cases recognize that, independently of the *cy pres* doctrine, a court of equity has the power to modify the terms of a trust in order substantially to carry out the intention of the testator. This rule applies both to private trusts (*Adams* v. *Cook,* 15 Cal.2d 352, 361 [101 P.2d 484]; Rest. Trusts, § 167; 3 Scott on Trusts, § 167), and to charitable trusts. (Rest. Trusts, § 381, and comment (a) thereunder.) Thus, where the doctrine of *cy pres* is confined within the limits defined above, the equitable power of a court to modify the trust has been applied to carry out the specific charitable intention of the donor. (*Allen* v. *Nasson Institute,* 107 Me. 120, 124 [77 A. 638]; *Manufacturers Nat. Bank* v. *Woodward,* 141 Me. 28 [38 A.2d 657, 658]; *South Kingstown* v. *Wakefield Trust Co.,* 48 R.I. 27, 32 [134 A. 815, 48 A.L.R. 1122].) A substantially similar doctrine is recognized in jurisdictions in which the *cy pres* doctrine is said not to apply. (*National Bank of Greece* v. *Savarika,* 167 Miss. 571, 593 [148 So. 649]; *Noble* v. *First National Bank,* 236 Ala. 499 [183 So. 393, 396]; *Dunn* v. *Ellisor,* 225 Ala. 15 [141 So. 700, 701].) Even in those jurisdictions in which the definition of the *cy pres* doctrine appears

to be broader in scope, there is authority that this equitable doctrine of modification or approximation is included within the broader principle. (*Crawfordsville Trust Co.* v. *Elston Bank & T. Co.*, 216 Ind. 596, 614 [25 N.E.2d 626] ; *Parsons* v. *Childs, supra* at 695; and see *Village of Hinsdale* v. *Chicago City Missionary Society, supra* at 234.) Under any of these views, there is no reason why a particular charitable purpose may not be substantially carried out, even though there is a provision for a gift over and the testator may not have had an intention to aid charity in general.

The trust assets available for distribution will amount to approximately $55,000 plus an undetermined refund of federal estate taxes if the Town of Kingsley takes its pro rata share, whereas the gifts under the trust total $111,000. If the trust assets are pro rated among the beneficiaries and the town's share is divided in accordance with the decree of distribution, between $15,000 and $18,000 will remain for the building of a hospital instead of the $30,000 provided for this purpose in the decree. Proportionally smaller sums will be available for furnishings and for the maintenance fund; if a smaller hospital is built, however, less will be needed for these purposes. The question as to the failure of the gift to the town may thus be determined on the basis of the construction fund alone.

The evidence presented at the trial shows that the population of Kingsley, Iowa was 1,145 according to the 1940 census and that there had been no appreciable increase therein at the time of the trial. There was testimony that, because of the low construction costs and other advantages in the town, a hospital adequate for its normal needs could be built for about $15,000. The court found that there was no hospital in Kingsley, Iowa at the time of the death of the testator or at any time since. Although there was no express finding of fact as to whether this sum would be adequate, the trial court ordered that a lesser amount, based on the one-third limitations applied to charitable gifts, be made available to the town for this purpose. On full consideration of these facts, it must be concluded that the building of a smaller structure would substantially carry out the testator's intention. It is a reasonable modification of the trust to enforce the gift for a smaller hospital rather than to allow the testator's intention to provide a hospital in the town to fail entirely. (See *Estate of Peabody*, 154 Cal. 173, 178 [97 P. 184] ; *Allen* v. *Nasson Institute, supra* at p. 125; *Jones' Unknown Heirs* v. *Dorchester*

(Tex.Civ.App.) 224 S.W. 596, 604.) Moreover, such a modification is in accord with the policy of the law in favor of charitable gifts. (See *Collier* v. *Lindley, supra; Village of Hinsdale* v. *Chicago City Missionary Society, supra* at p. 231; Zollman, *loc. cit. supra,* and cases there collected.) The gift of the Town of Kingsley must, therefore, be sustained.

The order instructing trustees provides that the town shall have one year from the date that the order determining the amount distributable to the town shall have become final within which to acquire a site for the hospital and heating plant and ''if it fails within said time to secure such site, then the bequest to it shall absolutely lapse and shall thereupon pass under the residuary clause of decedent's will.'' The decree of distribution provides in part that when all the bequests have been made the trust shall cease and all the rest, residue and remainder of the trust estate shall thereupon be given absolutely to Sarah M. Loring, the residuary beneficiary. The Braille Institute has raised the question as to how the funds are to be distributed in the event the town should fail to comply with the terms of the order. Although there is some ambiguity, the proper construction of the decree of distribution is that there is no remainder or residue until all the money gifts have been paid in full. (See cases collected in 118 A.L.R. 352.) In its memorandum opinion, the trial court so construed the decree when it held that, if the share of the town should become part of the residue, the Braille Institute should take its full gift. The same problem exists, however, with respect to the other beneficiaries. That part of the order instructing trustees is, therefore, modified by inserting the following provision: In the event the Town of Kingsley fails to take its share of the trust assets or fails to comply with this order within the time specified, the pro rata share of the Town of Kingsley shall be applied first to satisfy the money gifts to the other beneficiaries in full; any sum remaining after these gifts have been satisfied, shall be distributed to the residuary beneficiary, Sarah M. Loring.

The order instructing trustees is further modified, in accordance with this opinion, to delete therefrom the paragraph limiting the gifts to the Town of Kingsley and to the Braille Institute to one-third of the estate and providing that ''. . . the bequests of specific sums to individuals should be paid in full and the balance or residue distributed to Sara M. Loring.'' In its place, is substituted the following provision:

It is ordered, adjudged and decreed that upon distribution, the amount now available for distribution plus the amounts, if any, of overpayment of federal estate and California inheritance taxes (less any future administrative expenses) shall be distributed pro rata to the beneficiaries of the trust in proportion to the specific sums provided in the decree of distribution.

The order appealed from as modified herein is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Schauer, J., and Spence, J., concurred.